**The PEOPLE of the State of Colorado, Complainant,**

v.

**Rebecca Kay BRANDT, Respondent.**

**No. 14PDJ039.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Oct. 27, 2014.

---

## OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

On September 29, 2014, the Presiding Disciplinary Judge ("the Court") held a sanctions hearing pursuant to C.R.C.P. 251.15(b). Timothy J. O'Neill appeared on behalf of the Office of Attorney Regulation Counsel ("the People"), but Rebecca Kay Brandt ("Respondent") did not appear. The Court now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

### I. *SUMMARY*

Respondent accepted $5,000.00 in legal fees to represent a client in a divorce case. She deposited the entire retainer in her operating account even though she had not fully earned the retainer. When the client discharged her, Respondent refused to refund the unearned legal fees. Respondent thereby violated Colo. RPC 1.15(a), 1.15(b), 1.15(c), 1.16(d), and 8.4(c). Since the aggravating factors outnumber the sole mitigating factor, Respondent's knowing conversion of client funds warrants disbarment.

### II. *PROCEDURAL HISTORY*

The People filed their complaint against Respondent on April 28, 2014.[1] Re-

---

1. On that date, the People sent the complaint by    certified mail to Respondent's registered busi-

spondent failed to answer the complaint, and the Court granted the People's motion for default on July 15, 2014. Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[2] At the sanctions hearing on September 29, 2014, the People called Mary Curran as a witness but did not introduce any exhibits.

## III. ESTABLISHED FACTS AND RULE VIOLATIONS

The Court hereby adopts and incorporates by reference the factual background of this case, as fully detailed in the admitted complaint.[3] Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on June 20, 2000, under attorney registration number 31818. She is thus subject to the Court's jurisdiction in these disciplinary proceedings.[4]

On May 22, 2012, Mary Curran called Respondent to discuss possible representation in a divorce case in Elbert County. Curran was representing herself at the time. On June 29, Curran appeared at a temporary orders hearing and was awarded $5,000.00 for payment of legal costs in the divorce case. The money was to be paid from an annuity account belonging to the Currans.

On July 9, 2012, Respondent and Curran executed a fee agreement. It provided that Respondent would represent Curran in the divorce case, that Curran would pay a $5,000.00 retainer from the annuity account, and that Respondent would charge $250.00 per hour.

Respondent entered her appearance on July 11. The next day, she filed a request for the transcript of the temporary orders hearing and an Objection to Form of Order and Unopposed Motion to Make Transcript an Order of Court. The motion was granted on July 20. Respondent sent a proposed Stipulated Order for Temporary Orders to opposing counsel on August 2.

On August 29, Curran emailed Respondent, asking if she had received the $5,000.00 retainer. Respondent replied via email the next day, stating that she had not received payment and that she needed to update Curran on the case. Respondent indicated that she would send a more detailed email that evening and that she would call Curran on September 4. On September 4, Curran emailed Respondent, stating that a check had been recently mailed and raising concerns about her husband's compliance with the temporary orders. Curran said she would understand if Respondent did not want to continue as her counsel given the lack of payment.

Also on September 4, Respondent deposited a $5,000.00 retainer check from Curran into her operating account. At that time, Respondent had not fully earned the retainer. According to Respondent's billing records, she had earned only $2,545.22 as of September 6, leaving an unearned balance of $2,454.78.

Curran emailed Respondent on September 7, complaining that she had not called or emailed as promised. Respondent replied the same day, apologizing and asking about Curran's availability for the permanent orders hearing. Curran emailed back on September 12, complaining that Respondent had failed to follow up and saying: "I asked you to file a motion against my ex for violating the Temporary Court Order and your response is pick a date." Curran also said she intended to file her own motion with the court, and she asked Respondent to return the $5,000.00 retainer.

Curran again emailed Respondent on September 17, saying she would represent herself going forward. She also sent Respondent a draft motion to be filed pro se. Three days later, Curran emailed Respondent to say she wanted to retrieve her file that same day; she also asked Respondent to withdraw

---

ness address of 1624 Market Street, # 202, Denver, Colorado 80202.

2. See C.R.C.P. 251.15(b); *People v. Richards*, 748 P.2d 341, 346 (Colo.1987).

3. See the People's complaint for further detailed findings of fact.

4. See C.R.C.P. 251.1(b).

as counsel of record. Respondent emailed Curran to explain that the file was not immediately available due to computer repair issues.

On September 28, Respondent stated in an email that she understood Curran was obtaining new counsel. She said she would move to withdraw but would remain counsel of record until the court ruled on the motion. In the same email, Respondent told Curran that she would return any unused portion of the retainer once billing had been completed.

Respondent moved to withdraw on October 2, and the court granted the motion on October 8. Respondent sent Curran copies of her file by mail and email. But she did not give Curran any records of the fees she claimed to have earned until she produced those records to the People during the disciplinary investigation in May 2013.

Respondent never placed Curran's fees into a trust account; instead, she deposited them into her operating account and used them to pay personal expenses. As of October 31, 2012, the balance in Respondent's operating account was $944.30. On November 30, the balance was $858.78, and by December 31 it had dropped to $531.00. According to Respondent's billing records, she earned $3,422.72 of the $5,000.00 retainer. When she deposited the $5,000.00 into her operating account, she had earned just $2,595.22. Respondent has not returned the unearned balance of $1,577.28 to Curran.

Through the conduct described above, Respondent violated five Rules of Professional Conduct:

- Colo. RPC 1.15(a) requires a lawyer to hold client funds in a trust account, separate from the lawyer's own property, and to maintain complete records of those funds. By depositing Curran's unearned fees into her own operating account and failing to maintain complete records of the fees, Respondent violated Colo. RPC 1.15(a).

- Colo. RPC 1.15(b) provides that a lawyer must promptly deliver to a client any funds the client is entitled to receive. Respondent violated this rule when she failed to return Curran's unearned funds promptly upon Curran's request and upon termination of the representation.

- Colo. RPC 1.15(c) states that when a lawyer holds property in which two or more persons claim an interest, the lawyer must keep the property separate until there is an accounting and a severance of the interests. By depositing Curran's retainer into her operating account before earning all of the fees and by failing to account for the fees before treating them as her own, Respondent violated Colo. RPC 1.15(c).

- Colo. RPC 1.16(d) requires a lawyer to surrender unearned fees to a client upon termination of representation. Respondent violated this rule when she failed to return unearned fees after Curran discharged her.

- Colo. RPC 8.4(c) proscribes dishonesty, fraud, deceit, or misrepresentation. Respondent deposited unearned fees from Curran into her operating account, despite knowing she had not earned the fees. She knowingly converted the unearned fees by retaining and consuming them. She thereby violated Colo. RPC 8.4(c).

## IV. SANCTIONS

The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[5] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* By failing to preserve Curran's property, Respondent violated her duties of

5. *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

loyalty and candor to her client. Respondent also failed to uphold her responsibilities to the public and to the legal profession.

*Mental State:* The complaint explicitly establishes that Respondent knowingly converted funds belonging to Curran. The admitted facts also strongly suggest that Respondent knowingly committed the other misconduct in this case.

*Injury:* Respondent harmed Curran by converting $1,577.28 in unearned fees. At the sanctions hearing, Curran testified that she believes Respondent took advantage of her. For Curran, it "meant quite a bit" to go without the $1,577.28 Respondent wrongfully retained. Curran had to move out of her family home, which was in foreclosure, and she needed cash on hand to pay first and last months' rent and a damage deposit. To do so, she had to borrow money from her son. In a less tangible sense, Respondent's conduct caused Curran to reevaluate her view of lawyers. The representation was a "disheartening" experience that undermined her trust in the legal profession, she said.

### ABA *Standards* 4.0–7.0—Presumptive Sanction

Disbarment is the presumptive sanction under ABA *Standard* 4.11 when a lawyer knowingly converts client property and causes the client injury.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating circumstances include any considerations or factors that may warrant an increase in the degree of discipline to be imposed, while mitigating circumstances may justify a reduction in the severity of the sanction.[6] In this case, four aggravating factors are present. First, Respondent had a dishonest motive.[7] Second, since Respondent not only mismanaged her trust account but also knowingly consumed client funds and refused to return unearned funds when she was discharged, she committed multiple offenses.[8] Third, Respondent has substantial experience in the practice of law.[9] Finally, Respondent's failure to repay her client reflects an indifference to making restitution.[10] Since Respondent did not participate in the disciplinary proceeding, the Court is aware of just one mitigating factor—Respondent's lack of a prior disciplinary record—which the Court weighs in mitigation.[11]

### Analysis Under ABA *Standards* and Colorado Case Law

This Court is aware of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[12] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[13]

Colorado case law identifies disbarment as the proper sanction when a lawyer knowingly converts client funds, absent significant mitigation.[14] This is true even if the lawyer did not necessarily intend to permanently deprive the client of funds.[15] When a lawyer disregards a disciplinary proceeding after knowingly converting funds, it is all the more clear that disbarment is appropriate.[16]

---

6. *See* ABA *Standards* 9.21 & 9.31.

7. ABA *Standard* 9.22(b).

8. ABA *Standard* 9.22(d).

9. ABA *Standard* 9.22(i).

10. ABA *Standard* 9.22(j).

11. ABA *Standard* 9.32(a).

12. *See In re Attorney F.,* 285 P.3d 322, 327 (Colo. 2012); *In re Fischer,* 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and underval-

ued the importance of mitigating factors in determining the needs of the public).

13. *In re Attorney F.,* 285 P.3d at 327 (quoting *In re Rosen,* 198 P.3d 116, 121 (Colo.2008)).

14. *In re Haines,* 177 P.3d 1239, 1250 (Colo. 2008); *In re Cleland,* 2 P.3d 700, 703 (Colo. 2000).

15. *People v. Varallo,* 913 P.2d 1, 10–11 (Colo. 1996).

16. *In re Stevenson,* 979 P.2d 1043, 1045 (Colo. 1999).

■ Here, given the aggravating factors, relevant Colorado Supreme Court case law, and Respondent's failure to participate in this proceeding, the presumptive sanction of disbarment is clearly warranted.

## V. *CONCLUSION*

Respondent violated her duties to her client, the public, and the legal profession by mismanaging client funds and knowingly converting funds belonging to her client. Given that the aggravating factors outweigh the mitigating factors, Respondent must be disbarred.

## VI. *ORDER*

The Court therefore **ORDERS:**

1. **REBECCA KAY BRANDT,** attorney registration number 31818, is **DISBARRED.** The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment." [17]

2. Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.

3. Respondent also **SHALL** file with the Court, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.

4. The parties **SHALL** file any post-hearing motion or application for stay pending appeal with the Hearing Board **on or before November 17, 2014.** No extensions of time will be granted. Any response thereto **SHALL** be filed within seven days, unless otherwise ordered by the Court.

5. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** file a "Statement of Costs," **on or before November 10, 2014.** Any response thereto **SHALL** be filed within seven days, unless otherwise ordered by the Court.

---

17. In general, an order and notice of disbarment will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.