2012 CO 57

**In the Matter of ATTORNEY F.**

No. 11SA343.

Supreme Court of Colorado,
En Banc.

Sept. 10, 2012.

Hall & Evans, LLC, Frederick T. Martinez, Denver, Colorado, Attorney for the Respondent–Appellant.

Office of the Attorney Regulation Counsel, Adam J. Espinosa, Assistant Regulation Counsel, Denver, Colorado, Attorney for the Complainant–Appellee.

Justice MÁRQUEZ delivered the Opinion of the Court.

¶ 1 In this attorney discipline proceeding, the respondent, Attorney F [1], appeals from the decision and order of the Hearing Board imposing a sanction of public censure for

---

1. Under the current attorney discipline system, we have chosen to identify the respondent attorney by a single initial in cases in which we did not impose discipline or where the disciplinary action was still pending. *See In re Attorney C*, 47 P.3d 1167, 1168 n. 2 (Colo.2002); *In re Attorney D.*, 57 P.3d 395 (Colo.2002); *In re Requests for Investigation of Attorney E.*, 78 P.3d 300, 302 n. 2 (Colo.2003). Here, because we reverse the Hearing Board's imposition of a public censure and remand for redetermination of the sanction, we do not wish the publication of this opinion to serve as a de facto public censure of the respondent attorney. We therefore identify the attorney in this opinion as "Attorney F", continuing the alphabetical sequence established by our prior cases.

Attorney F's knowing misrepresentation to opposing counsel. Attorney F does not challenge the Hearing Board's conclusion that she violated Rules 8.4(c) and 8.4(d) of the Colorado Rules of Professional Conduct by making a knowing misrepresentation. Instead, she contends that the Hearing Board erred in imposing a public censure. She argues that the Hearing Board was inclined to impose a private admonition but mistakenly believed that this court's precedent prohibited the Board from imposing any sanction less than a public censure. We hold that the Hearing Board erred in concluding that it was required by our case law to impose a public censure instead of a private admonition. Accordingly, we reverse the sanction imposed by the Hearing Board and remand for further proceedings consistent with this opinion.

¶ 2 Attorney F also contends that the Presiding Disciplinary Judge erred by denying her motion to compel the Office of Attorney Regulation Counsel to remove a website display indicating the fact that the Hearing Board had determined that a public censure was warranted in her case. Because the website display complies with our rules regarding attorney discipline proceedings, we affirm the Presiding Disciplinary Judge's order denying Attorney F's motion to compel.

## I. Facts and Procedural History

¶ 3 Attorney F is a deputy district attorney. The misconduct at issue occurred during her prosecution of G.T. for sexual assault on a child. On the second day of trial, defense counsel cross-examined S.M., the victim's mother, and elicited testimony that arguably contradicted the victim's account of the alleged abuse. During the lunch recess, Attorney F had a conversation with S.M. about the contradictory testimony.[2] A victim advocate who worked with Attorney F was present for portions of this conversation. Before the proceedings resumed, one of the defense attorneys saw S.M. leave a meeting room followed shortly by Attorney F.

¶ 4 After lunch, Attorney F rehabilitated S.M. on redirect examination, addressing two specific aspects of her earlier testimony. On recross, defense counsel engaged in the following colloquy with S.M.:

Q. Okay. By the way, I assume you didn't speak with anyone from the district attorney's office over the lunch recess; is that right?

A. No.

Q. You did not?

A. No.

Although S.M.'s testimony was incorrect, Attorney F did nothing to immediately rectify the situation, such as requesting a bench conference or redirecting S.M. on the issue.

¶ 5 Later that afternoon, Attorney F realized she had forgotten to have her forensic interviewer authenticate a video recording and requested a recess to obtain the authentication. While Attorney F was rushing around, the victim advocate approached Attorney F and asked, "What are we going to do about [S.M.]?" Attorney F replied, "What about her?" The victim advocate explained, "She lied on the witness stand." Attorney F told the victim advocate that she could not deal with the matter at the moment and suggested that they talk about it later. Before the Hearing Board, Attorney F testified that she did not appreciate the significance of the victim advocate's remark because she was rushed and focused on obtaining the authentication.

¶ 6 During the same afternoon recess, defense counsel approached Attorney F at the prosecution table and asked her whether she had spoken with S.M. over the lunch recess. Attorney F testified before the Hearing Board that the question was "vague," that she was not really paying attention to it, and that she gave a "noncommittal" answer. But both defense attorneys testified that the question was straightforward and that Attorney F directly answered that she had not spoken with S.M. during the recess. In addition, the victim advocate testified that later that evening, Attorney F told her that defense counsel had inquired whether Attorney F had conferred with S.M. during lunch and that Attorney F had answered "no." The

---

**2.** In his testimony before the Hearing Board, the trial judge acknowledged that it was permissible for the prosecutor to speak with the witness during a break.

**324**

victim advocate testified that she then exclaimed, "Oh my God! What were you thinking?" and that Attorney F responded, "I wasn't thinking; I just froze."

¶ 7 After her discussion with the victim advocate, Attorney F realized the seriousness of the situation and contacted her supervisors that evening. She arranged to have an investigator immediately interview S.M. regarding her false testimony and instructed the investigator to document the interview in a memorandum, which she disclosed to defense counsel the following morning. The memorandum represented that S.M. had not understood defense counsel's questions during recross examination. Attorney F also contacted defense counsel regarding the false testimony and arranged for S.M. to be available the following morning for further testimony.

¶ 8 The following morning the trial court held an in camera hearing regarding Attorney F's alleged misconduct. The trial court decided to give the jury a curative instruction stating that S.M. had been asked on recross examination whether she had spoken with any member of the district attorney's office during the lunch break; that S.M.'s response was no; that this response was not true; that in fact, during the lunch break the prosecutor personally spoke with S.M. regarding two areas of testimony under cross-examination; and that the prosecutor did not inform the defense of this conversation until after court had adjourned for the day. The jury ultimately acquitted G.T. on all charges, and the trial judge reported Attorney F's conduct to the Office of Attorney Regulation Counsel.

¶ 9 The Hearing Board found the testimony of the defense attorneys credible and the victim advocate's testimony especially compelling. Accordingly, the Hearing Board found that Attorney F violated Colo. RPC 8.4(c) and 8.4(d) [3] by knowingly misrepresenting to defense counsel that she did not speak with S.M. over the lunch recess.[4] The Hearing Board concluded that it was bound by this court's case law to impose a public censure as a sanction for Attorney F's misconduct.

¶ 10 Shortly after the Hearing Board issued its decision on October 19, 2011, the Office of Attorney Regulation Counsel updated Attorney F's listing on its public website to reflect the date of the Hearing Board's decision, its sanction of "PUBC," and an effective date of the discipline. On October 31, 2011, Attorney F sought a stay of the discipline pending appeal. Attorney F simultaneously moved to compel the Office of Attorney Regulation Counsel to remove from the website the publication of any discipline associated with the case. The Hearing Board granted the stay on November 8, 2011. The same day, the Presiding Disciplinary Judge denied Attorney F's motion to compel, concluding that Colorado Rule of Civil Procedure 251.31(a) requires that once a formal complaint is filed, "all records" pertaining to the disciplinary process are open to public scrutiny. The Presiding Disciplinary Judge observed, however, that the effective date of the discipline posted on the webpage was inaccurate given the stay entered pending appeal. The Presiding Disciplinary Judge urged the Office of Attorney Regulation Counsel to correct this inaccuracy. Thereafter, the Office of Attorney Regulation Coun-

3. Colo. RPC 8.4 provides that it is professional misconduct for a lawyer to engage in conduct "involving dishonesty, fraud, deceit or misrepresentation" or "that is prejudicial to the administration of justice." Colo. RPC 8.4(c), (d).

4. The Regulation Counsel also alleged that Attorney F's failure to immediately correct S.M.'s misstatement on the record also constituted a violation of Colo. RPC 8.4(d). However, Attorney F testified that she did not hear the misstatement because she was tired, unfocused, and thinking ahead to her next witness. The Hearing Board found that the Regulation Counsel did not present clear and convincing evidence that Attorney F was aware of S.M.'s misstatement at that

time and therefore concluded that Attorney F had not violated Colo. RPC 8.4(d) on this basis. Finally, the Regulation Counsel alleged that Attorney F failed to take reasonable remedial measures to disclose S.M.'s false testimony, in violation of Colo. RPC 3.3(a)(3), which provides that if a "witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." However, the Hearing Board found that the Regulation Counsel did not prove this violation. The Regulation Counsel does not appeal these findings.

sel amended the webpage to reflect the stay and remove the effective date of the discipline.

¶ 11 Attorney F now appeals both the sanction imposed by the Hearing Board and the denial of her motion to compel.[5]

## II. Analysis

¶ 12 We reverse the Hearing Board's sanction because the Hearing Board erroneously concluded that it lacked discretion in determining the sanction for Attorney F's misconduct. We therefore remand the case for a redetermination of the appropriate sanction so that the Hearing Board may exercise its discretion. We affirm the Presiding Disciplinary Judge's order denying Attorney F's motion to compel removal of the publication of discipline because the information posted on the Office of Attorney Regulation Counsel's webpage complies with our rules of procedure regarding attorney discipline proceedings.

### A.

■ ¶ 13 We hold that the Hearing Board erred in concluding that it was compelled by our case law to impose a public censure in this case instead of a private admonition.

¶ 14 In its opinion, the Hearing Board reviewed both the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards") and this court's case law in discussing the appropriate sanction for Attorney F's misconduct. The Hearing Board acknowledged that it "struggled to reconcile these governing authorities with [its] collective sense of fairness and proportionality," stating that it believed Attorney F's misrepresentation was a "momentary aberration" in what otherwise has been a "fine and ethical career in public service." It further stated that it was swayed by its finding of six factors in mitigation and the absence of any aggravating circumstances. It therefore acknowledged that it "leaned

toward imposing private admonition in this case." However, the Hearing Board concluded that it was "bound by Colorado Supreme Court case law that mandates public censure, at a minimum, for an attorney's knowing dishonesty, particularly during the course of and in connection with a judicial proceeding." Because the Hearing Board could not find that Attorney F's misconduct was merely negligent, nor resulted in little or no injury to the public, the legal system, or the profession, the Hearing Board concluded that it *"must* impose public censure in this matter." (Emphasis added).

■ ¶ 15 The Hearing Board erred in concluding that it was compelled by this court's case law to impose a public censure because the Hearing Board always has discretion in determining the appropriate sanction for attorney misconduct. Our rules of procedure regarding attorney discipline proceedings provide that the Hearing Board may impose "any" of the listed forms of discipline, which range from private admonition to disbarment. C.R.C.P. 251.6. This court shall affirm the discipline imposed by the Hearing Board unless that discipline is based on clearly erroneous findings of fact or erroneous conclusions of law, bears no relation to the conduct, is manifestly excessive or insufficient in relation to the needs of the public, or is otherwise unreasonable. C.R.C.P. 251.27; *see also In re Rosen,* 198 P.3d 116, 119 (Colo.2008).

¶ 16 In determining that it must impose a public censure, the Hearing Board relied on several cases in which this court held that a public censure was the appropriate sanction for an attorney's knowing misrepresentation. *People v. Rolfe,* 962 P.2d 981, 983 (Colo.1998) (upholding public censure as an adequate sanction where an attorney made knowing misrepresentations to a court but the record also reflected several mitigating factors); *People v. Small,* 962 P.2d 258, 260-61 (Colo. 1998) (accepting conditional admission and

---

5. Attorney F presented the following issues on appeal:

   1. Whether the Hearing Board erred when it concluded that the law required the imposition of a public censure versus a private censure.

2. Whether the Presiding Disciplinary Judge erred by allowing the public disclosure of the discipline assessed on the World Wide Web when the Hearing Board had not issued a final "Order and Notice of Public Censure" and the sanction was not yet in effect.

recommendation of a public censure where an attorney falsely testified under oath; reasoning that a private admonition would be inappropriate because the misconduct was knowing and not merely negligent, but that suspension was unwarranted because the false testimony did not go to a dispositive or material fact); *People v. Bertagnolli*, 861 P.2d 717, 721 (Colo.1993) (rejecting recommendation for a private admonition as unduly lenient and instead imposing a public censure where an attorney knowingly made misleading statements before an arbitration panel).

¶ 17 The Hearing Board placed particular emphasis on *People v. Lopez*, 845 P.2d 1153 (Colo.1993). In that case, we rejected the hearing panel's recommendation of a private admonition and instead imposed a public censure where an attorney revealed client confidences to opposing counsel and then gave false responses during a grievance committee investigation. *Id.* at 1154–55. We quoted the commentary to ABA Standard 2.6, which states that a private admonition " 'should be used only when the lawyer is negligent, when the ethical violation results in little or no injury to a client, the public, the legal system, or the profession, and when there is little or no likelihood of repetition.' " *Id.* at 1156 (quoting *People v. Smith*, 769 P.2d 1078, 1080 (Colo.1989) (quoting ABA Standard 2.6 cmt.)). Relying in part on this commentary, we concluded that the attorney's conduct, when considered with all the applicable aggravating and mitigating factors, supported the imposition of public censure. *Id.*

¶ 18 Here, based on our quotation of the commentary to ABA Standard 2.6 in *Lopez*, the Hearing Board stated that it was "not free to depart" from the sanction recommended by that quotation, apparently concluding that our quotation of that commentary amounted to an adoption of the comment as a binding rule. However, in *Lopez*, as in many of our attorney discipline cases, we looked to the ABA Standards for mere guidance in determining the appropriate sanction in that case. *See, e.g., In re Roose*, 69 P.3d 43, 46–47 (Colo. 2003) ("[W]e have consistently recognized the ABA Standards ... as the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct.").

¶ 19 The ABA Standards were created as a model system of sanctions, designed to achieve greater consistency in the sanctioning of attorney misconduct while at the same time leaving room for "flexibility and creativity in assigning sanctions in particular cases of lawyer misconduct." ABA Standards, Preface (2005). Flexibility and discretion are built into the ABA Standards' two-step framework for determining the appropriate sanction. *See* ABA Standards, Theoretical Framework; ABA Standard 3.0 & cmt. To arrive at a presumptive sanction, the misconduct first should be analyzed in terms of the duty violated, the attorney's mental state, and the extent of the actual or potential injury caused by the misconduct. *Id.* Then, to arrive at the ultimate sanction, aggravating and mitigating factors should be taken into account. *Id.; see also In re Rosen*, 198 P.3d at 121 ("The ABA Standards clearly contemplate that after applying its scheme to arrive at a presumptive form and range of discipline, a disciplining authority will always consider any other factors, unique to the particular respondent, in the particular case, that should mitigate or aggravate that presumptive discipline.") (citing ABA Standards 3.0 cmt., 9.2, 9.3). Because the ultimate sanction imposed will depend on the particular aggravating and mitigating factors present in a case, this framework is "not designed to propose a specific sanction for each of the myriad of fact patterns in cases of lawyer misconduct," but rather is designed to "give courts the flexibility to select the appropriate sanction in each particular case." ABA Standards, Theoretical Framework; *see also* ABA Standard 1.3 cmt. ("While these standards set forth a comprehensive model to be used in imposing sanctions, they also recognize that sanctions imposed must reflect the circumstances of each individual lawyer, and therefore provide for consideration of aggravating and mitigating circumstances in each case.").

¶ 20 Our quotation of the commentary to ABA Standard 2.6 in *Lopez* did not alter the character of that Standard or convert it from a flexible guideline to a binding rule. The

commentary to ABA Standard 2.6 is useful in determining the appropriate presumptive sanction, but as discussed above, the consideration of the specific aggravating and mitigating factors in a case permits a disciplining authority to deviate from that presumptive sanction. Our discussion in *Lopez* does not indicate otherwise. Thus, the Hearing Board erred in concluding that it was "not free to depart" from the language in the commentary to ABA Standard 2.6 quoted in *Lopez*. Moreover, although it was appropriate for the Hearing Board to consider our prior decisions regarding the imposition of sanctions for attorney misconduct, the Hearing Board erred to the extent that it believed it was not free to distinguish those cases. As we have previously observed, "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases." *In re Rosen*, 198 P.3d at 121. In addition, the cases relied on by the Hearing Board predated the revision to the Colorado attorney disciplinary system and the 1999 adoption of the current rules of procedure governing such proceedings, including Rule 251.27 establishing the standard of review by this court.

¶ 21 We note that the Hearing Board's opinion suggests that it did not properly follow the two-step framework of ABA Standard 3.0 to arrive at its sanction. Although the Hearing Board correctly began its analysis by assessing Attorney F's violation of her duty to the public, her knowing mental state, and the injury to the legal system caused by her misconduct, the Board next considered the aggravating and mitigating factors listed in ABA Standard 9.0. After finding the existence of six mitigating factors, and no aggravating factors, the Hearing Board then discussed ABA Standard 5.13, which recommends public censure as "generally appropriate" when an attorney knowingly engages in non-criminal conduct involving misrepresentation that adversely reflects on the attorney's fitness to practice law. The Hearing Board's opinion suggests that the Board failed to recognize that ABA Standard 5.13 fits into the overall framework as a presumptive sanction to be used as starting point *before* considering the aggravating and

mitigating factors to determine whether to depart from the presumptive sanction.

¶ 22 By reversing the Hearing Board's sanction and remanding this matter, we do not suggest that the Hearing Board's imposition of a public censure in this case "(1) bears no relation to the conduct, (2) is manifestly excessive or insufficient in relation to the needs of the public, or (3) is otherwise unreasonable." C.R.C.P. 251.27(b). Rather, because it appears that the Hearing Board erroneously concluded that it was compelled by our case law to impose a public censure, we reverse the sanction and remand the case for a redetermination of the appropriate sanction to allow the Hearing Board to exercise its discretion.

**B.**

¶ 23 We further hold that the Presiding Disciplinary Judge did not err by denying Attorney F's motion to compel the Office of Attorney Regulation Counsel to remove information on its website disclosing the fact that the Hearing Board determined that a public censure was warranted in her case.

¶ 24 The Colorado Supreme Court attorney disciplinary website, which is administered by the Office of Attorney Regulation Counsel, allows the public to search registered attorneys by name to access an attorney's disciplinary history. The Hearing Board's opinion and decision imposing sanctions ordered that "the public censure shall take effect only upon the issuance of an 'Order and Notice of Public Censure.'" The opinion explained that an order and notice of a sanction generally issues thirty-one days after the decision is entered but may issue later if a stay is entered pending appeal, or if post-trial motions are filed. After the Hearing Board issued its opinion in this case, Attorney F's listing on the Office of Attorney Regulation Counsel website was updated to display the PDJ trial number, the date of the Hearing Board's decision, the disposition of "PUBC," and the effective date of the discipline. When the Presiding Disciplinary Judge granted Attorney F's motion to stay the decision pending appeal, the listing was again updated to reflect that the Hearing Board's decision had been stayed. Because

the Presiding Disciplinary Judge granted a stay, the effective date of the discipline was deleted from the webpage, as no "Order and Notice of Censure" had issued. In addition, the supreme court case number was added. The webpage does not link to or otherwise post the content of the Hearing Board's opinion.

¶ 25 Attorney F argues that the information posted on the Office of Attorney Regulation Counsel's webpage violated the Hearing Board's order that "the public censure shall take effect only upon the issuance of an 'Order and Notice of Public Censure,'" and that the Presiding Disciplinary Judge erred by allowing the Office of Attorney Regulation Counsel to publicly disclose the proposed discipline on the webpage. We disagree.

¶ 26 Under our rules, except as otherwise provided, "all records" (with certain limited exceptions) "shall be available to the public" once the Attorney Regulation Committee determines that reasonable cause to believe grounds for discipline exist and the Regulation Counsel files and serves a complaint as provided in C.R.C.P. 251.14. C.R.C.P. 251.31(a). Thus, once a complaint against an attorney has been filed and served, the disciplinary proceedings are no longer confidential, and the proceedings that follow are public. *Compare* C.R.C.P. 251.31(b) *with* C.R.C.P. 251.31(a) & (c). Moreover, a public censure "is a reproach published with other grievance decisions and made available to the public." C.R.C.P. 251.6(c). And although a private admonition "is an unpublished reproach," C.R.C.P. 251.6(d), "the fact that private admonition is imposed shall be public information." C.R.C.P. 251.31(i).

¶ 27 To the extent that Attorney F contends that the Office of Attorney Regulation Counsel's posting of the Hearing Board's disposition of "PUBC" effectively disciplined Attorney F immediately, we disagree. The webpage simply reported the fact that the Hearing Board had determined that a public censure was warranted, and the webpage was thereafter timely and accurately updated to reflect that the decision had been stayed pending appeal. Under our rules, the fact that the Hearing Board has imposed a particular sanction after a public proceeding is a matter of public record. C.R.C.P. 251.31(a), (i). Thus, even if Attorney F had received a private admonition, that fact would be public information. C.R.C.P. 251.31(i). In short, the fact that the Hearing Board has imposed a particular sanction following a public proceeding is public information under our rules. We also agree with the Presiding Disciplinary Judge that suppressing the Hearing Board's disposition in a case pending resolution of an appeal would "impair the goal of transparency and public accountability in our disciplinary system." Accordingly, we hold that the Presiding Disciplinary Judge did not err in refusing to compel the Office of Attorney Regulation Counsel to remove this information from the webpage listing.

### III. Conclusion

¶ 28 For the foregoing reasons, we reverse the sanction imposed by the Hearing Board and remand the case for a redetermination of the sanction so that the Hearing Board may exercise its discretion in choosing the appropriate sanction. Additionally, we affirm the Presiding Disciplinary Judge's order denying Attorney F's motion to compel the Office of Attorney Regulation Counsel to remove the disposition "PUBC" posted on Attorney F's listing on the attorney disciplinary website.