**The PEOPLE of the State of Colorado, Complainant,**

v.

**Ruth MENDUS, Respondent.**

**No. 15PDJ027.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Oct. 14, 2015.

---

**31.** In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

**OPINION AND DECISION IMPOSING
SANCTIONS PURSUANT TO
C.R.C.P. 251.19(c)**

## I. *SUMMARY*

Respondent neglected two clients in divorce and post-decree matters. Respondent struggled with serious mental health issues during that period and ultimately was transferred to disability inactive status, but she failed to withdraw from her clients' cases and to protect their interests. She also neglected to safeguard client funds and to keep proper financial records. Through this conduct, she Colo. RPC 1.3, 1.4(a)(3), 1.15(a) (2008), 1.15(i)(6) (2008), 1.16(a), 1.16(d), and 3.4(c). The People ask the Court to impose a two- or three-year suspension, and the Court deems a two-year suspension the appropriate sanction.

## II. *PROCEDURAL HISTORY*

On April 16, 2015, the People filed their complaint. They sent copies via certified mail to Respondent's registered business address, but she did not answer. The People moved for default judgment on June 5, 2015, but Respondent again filed no response. On July 1, 2015, the Court entered default, thus deeming the facts alleged in the complaint admitted and all rule violations established by clear and convincing evidence.[1]

At the sanctions hearing on September 16, 2015, Beverly Williamson and Patricia Bagley testified by telephone, and the People submitted Exhibits 1–3.

---

1. *See* C.R.C.P. 251.15(b); *People v. Richards*, 748 P.2d 341, 346 (Colo.1987).

## III. ESTABLISHED FACTS AND RULE VIOLATIONS

The Court hereby adopts and incorporates by reference the averments in the admitted complaint.[2] Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on October 15, 2001, under attorney registration number 33343.[3] She is thus subject to the Court's jurisdiction in this disciplinary proceeding.[4]

### Williamson Matter

In spring 2013, Beverly Williamson hired Respondent to represent her in a divorce case. Respondent failed to timely file court documents, including important medical documents, and to return Williamson's phone calls. In March 2014, Respondent neglected to inform Williamson that her ex-husband had moved to modify maintenance. Through this conduct, Respondent violated Colo. RPC 1.3 (a lawyer shall act with reasonable diligence and promptness when representing a client) and Colo. RPC 1.4(a)(3). (a lawyer shall keep a client reasonably informed about the status of the matter).

In addition, Respondent kept insufficient trust account records concerning Williamson's funds, thereby violating Colo. RPC 1.15(j) (2008) and, to the extent Respondent's misconduct continued after the amendments to Colo. RPC 1.15 took effect on June 18, 2014, Colo. RPC 1.15D (a lawyer shall maintain certain records related to trust accounts and client billing).

Williamson last spoke with Respondent during a telephone call in April 2014. During the call, Respondent said that she had been mentally ill for the last eighteen months and that she could not focus on her work as an attorney. Respondent asked Williamson to seek permission from the court clerk for Respondent to be released from the case. Williamson, however, did not want Respondent to withdraw because she had already paid for her services.

At the sanctions hearing, Williamson testified in detail about the April phone call. According to Williamson, the call took place about half an hour before a modification hearing. Respondent was crying hysterically and it was difficult for Williamson to even recognize who she was. Respondent told Williamson that she was having a mental breakdown and that she was about to be committed to a mental institution. Respondent further said that cases like Williamson's had pushed her over the edge, that she had made many mistakes, and that she was sorry. Williamson told Respondent that she needed her to do her job, but Respondent kept urging her to call the court and seek her release. Williamson called the number Respondent had given her, but it was an incorrect number.

Williamson testified that Respondent attended the modification hearing that day, but only said perhaps "three words." Respondent did not present any evidence or otherwise defend Williamson. According to Williamson, Respondent should have presented evidence of Williamson's brain injury and her resulting inability to work. In addition, Williamson believes that Respondent should have rebutted opposing counsel's statements that "defamed" her, including the characterization that she was a drug addict who could not parent. As a result of the hearing, Williamson "lost [her] daughter," who she did not see for about a year. She also lost the right to receive maintenance payments and was ordered to pay child support.

After Williamson filed a pro se motion to deny modification of maintenance, the court set a hearing in May 2014. Respondent failed to appear. The court then removed her from the case. By failing to timely withdraw and to properly terminate the representation, Respondent violated Colo. RPC 1.16(a)(2) (a lawyer shall withdraw from representation if the lawyer's physical or mental condition materially impairs the lawyer's

---

**2.** See the complaint for additional factual background. All facts set forth in this section of the opinion are drawn from the complaint, save for the two paragraphs summarizing Williamson's testimony at the sanctions hearing.

**3.** Respondent's registered business address is 18 North Sierra Madre Street, Suite E, Colorado Springs, Colorado 80903.

**4.** See C.R.C.P. 251.1(b).

ability to represent the client) and Colo. RPC 1.16(d) (a lawyer shall protect a client's interests upon termination of the representation, including by refunding unearned fees and any papers and property to which the client is entitled). In addition, by neglecting to notify Williamson of her transfer to disability inactive status under C.R.C.P. 251.28, she violated Colo. RPC 3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal).

### Bagley Matter

Patricia Bagley was divorced in 2003, and her ex-husband was ordered to pay her spousal support and a portion of his monthly retirement income. Bagley, who is disabled, relies almost entirely on this income. She hired Respondent in 2005 when her ex-husband failed to make required payments. From 2005 through 2008, Respondent filed garnishments and related motions to maintain Bagley's payments. The case was then dormant from 2008 to 2013.

In 2013, Bagley's ex-husband moved to suspend payments, alleging that a miscalculation in payments had been made. Respondent responded to the motion on Bagley's behalf, and the court set a hearing in April 2014.

In February 2014, Respondent and Bagley spoke by phone about the upcoming hearing. Respondent suggested that Bagley get another lawyer, saying that she was having emotional struggles and was seeing a psychiatrist. Bagley said she still wanted Respondent to represent her.

Bagley had no more contact with Respondent after this call, yet Respondent did not withdraw from the case. Bagley's ex-husband filed a motion to continue the hearing in April 2014, but Respondent did not communicate with Bagley about the motion. Bagley's ex-husband then filed a release of income assignment, which the court granted in May 2014. Bagley did not receive her regular monthly payment in July 2014, which came as an unwelcome surprise. She tried to contact Respondent but never received a response. When Bagley spoke to a law firm in

the same building as Respondent's office, she learned that Respondent had moved out of the office in May 2014. Respondent did not tell Bagley that she had been transferred to disability inactive status in June 2014, and Respondent never withdrew from her case.

In this matter, Respondent violated the same rules as in the Williamson matter: Colo. RPC 1.3, 1.4(a)(3), 1.16(a), 1.16(d), and 3.4(c).

### COLTAF Account

In 2013, Respondent mismanaged her COLTAF trust account and her financial records in several ways. First, Respondent failed to maintain any financial records for her trust or operating accounts, other than bank statements and checks. She thus violated Colo. RPC 1.15(j) (2008). Second, she neglected to reconcile her trust account on a quarterly basis in contravention of Colo. RPC 1.15(i)(6) (2008) (a lawyer or lawyer's designee shall reconcile trust account records no less than quarterly). Third, Respondent failed to safeguard client property and to maintain records of client funds. In particular, she did not maintain sufficient funds in her trust account to cover a refund made to a client. The client's attempt to cash the refund check caused an overdraft of more than $300.00. This conduct violated Colo. RPC 1.15(a) (2008) (a lawyer shall hold client property separate from the lawyer's own property and shall maintain records of client funds).

### IV. *SANCTIONS*

 The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[5] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.

---

5. *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

## ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* By neglecting her clients, failing to communicate with them, and failing to safeguard their funds, Respondent violated her duties to her clients. When she failed to properly withdraw from both representations, she transgressed her duties to the profession and the legal system.

*Mental State:* The order of default establishes that Respondent knowingly violated Colo. RPC 3.4(c). The Court concludes that Respondent otherwise acted recklessly, given the evidence of her mental illness and the limited other evidence available.

*Injury:* Williamson testified at the sanctions hearing that when Respondent failed to defend her at the modification hearing, she "lost [her] daughter," who she did not see for about a year, lost the right to receive maintenance payments, and was ordered to pay child support. Williamson is troubled that she was "defamed" at the modification hearing yet Respondent presented no evidence of her good character. Although the Court cannot be sure that the outcome of the modification hearing would have been different if Respondent had adequately represented Williamson's interests, the Court concludes that Respondent caused Williamson potentially serious harm by failing to defend her.

Bagley testified that Respondent's neglect made her very anxious, exacerbating her health conditions. Respondent's failure to warn her that her payments would be cut off caused Bagley actual harm because she has little money to live on. The Court also finds that Respondent's failure to defend Bagley in spring 2014 caused significant potential injury, since Respondent might have been able to maintain Bagley's payments.

In both cases, the Court concludes that Respondent caused her clients actual harm by failing to communicate with them. The complaint also makes clear that Respondent's inadequate recordkeeping undermined the People's ability to investigate and prosecute this disciplinary case. Finally, Respondent's trust account practices caused her other clients potential injury.

## ABA *Standards* 4.0–7.0—Presumptive Sanction

The Court finds that ABA *Standard* 4.42—calling for suspension when a lawyer engages in a pattern of neglect, thereby causing a client injury or potential injury—is the most applicable presumptive sanction. Despite the relatively significant degree of potential injury posed by Respondent's conduct, a review of the commentary to ABA *Standard* 4.4 convinces this Court that ABA *Standard* 4.42—not ABA *Standard* 4.41—should apply here.[6] The commentary calls out disbarment as the presumptive sanction when "lawyers simply abandon their practices, leaving clients completely unaware that they have no legal representation" and where lawyers' conduct shows "that they either cannot or will not conform to the required ethical standards."[7] The cases cited as examples involve, for instance, abandonment of 450 pending client matters and neglect spanning the course of more than a dozen years.[8] Suspension is identified as the appropriate presumptive sanction for instances of neglect that are serious yet less extreme, such as where a lawyer failed to appear at a criminal hearing, failed to file a divorce action, and failed to prosecute a civil case.[9] Here, the Court finds no clear and convincing evidence that Respondent abandoned her law practice as a whole,[10] and her misconduct is serious but not extreme.

Case law reinforces the Court's conclusion that suspension should be the presumptive sanction here. Although the Colorado Supreme Court has often elected not to call out

6. ABA *Standard* 4.41 calls for disbarment when a lawyer causes a client serious or potentially serious injury by abandoning the practice, knowingly failing to perform services for a client, or engaging in a pattern of neglect with respect to client matters.

7. ABA *Standard* 4.41 commentary.

8. ABA *Standard* 4.41 commentary.

9. ABA *Standard* 4.42 commentary.

10. *Cf. People v. Williams*, 845 P.2d 1150, 1152 (Colo.1993) (determining that the respondent had abandoned his practice, making ABA *Standard* 4.41 applicable).

a specific presumptive standard for cases of neglect, a close examination of the case law strongly suggests that the Colorado Supreme Court has implicitly identified suspension as the presumptive sanction. In *People v. Odom*, for instance, the Colorado Supreme Court suspended for three years a lawyer who failed to inform a client about a settlement offer and abandoned a second client, among other misconduct, where seven aggravating factors and no mitigators applied.[11] Given that aggravating factors predominated, the Colorado Supreme Court must have deemed ABA *Standard* 4.42—calling for suspension—as the applicable presumptive standard.[12]

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating circumstances include any considerations or factors that may warrant an increase in the degree of discipline to be imposed, while mitigating circumstances may justify a reduction in the severity of the sanction.[13]

In this case, four aggravating factors are present. First, Respondent engaged in a pattern of misconduct by consistently failing to keep records and by neglecting two different clients.[14] Given the incipient nature of this pattern, the Court accords relatively scant weight to this aggravating factor. Second, Respondent engaged in multiple types of misconduct: she failed to communicate with clients, neglected their cases, mismanaged their funds, failed to keep proper records, and did not properly withdraw from

cases.[15] Third, Bagley was a vulnerable victim; she is a disabled person who relied almost entirely on the income she had asked Respondent to help her maintain.[16] Fourth, Respondent had substantial experience as a lawyer at the time of her misconduct.[17]

The People concede that four mitigating factors apply here. First, Respondent has no disciplinary record.[18] Second, she lacked a dishonest or selfish motive.[19] Third, Respondent's mental illness was a significant emotional problem.[20] Fourth, although the People concede that Respondent has demonstrated remorse and Williamson testified that Respondent apologized to her, the Court concludes that Respondent's limited expression of remorse merits minimal weight in mitigation.[21]

### Analysis Under ABA *Standards* and Colorado Case Law

The Court is mindful of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[22] recognizing that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases." [23]

The People ask the Court to impose a suspension ranging from two to three years. The balance of aggravating and mitigating factors here is roughly in equipoise, so there is no basis under the ABA *Standards* to depart from the presumptive sanction of sus-

---

11. 914 P.2d 342, 345 (Colo.1996).

12. *See also People v. Rishel*, 956 P.2d 542, 544 (Colo.1998).

13. *See* ABA *Standards* 9.21 & 9.31.

14. ABA *Standard* 9.22(c).

15. ABA *Standard* 9.22(d).

16. ABA *Standard* 9.22(h).

17. ABA *Standard* 9.22(i).

18. ABA *Standard* 9.32(a).

19. ABA *Standard* 9.32(b).

20. ABA *Standard* 9.32(c). Her illness does not, however, qualify as a mental disability under ABA *Standard* 9.32(i), as there is no medical evidence that her disability caused the misconduct or proof that she has recovered from the disability, among other issues.

21. *See* ABA *Standard* 9.32(*l*).

22. *See In re Attorney F.*, 285 P.3d 322, 327 (Colo. 2012); *In re Fischer*, 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

23. *In re Attorney F.*, 285 P.3d at 327 (quoting *In re Rosen*, 198 P.3d 116, 121 (Colo.2008)).

pension by imposing either disbarment or a stayed suspension. The Court has been unable to identify any case law with similar factual patterns, where an attorney's serious neglect of clients was tempered by evidence of mental illness and an attempt to warn clients of the attorney's inability to represent them. This case is certainly distinguishable from cases of abandonment where disbarment has been imposed.[24]

Although the People urge the Court to find that Respondent abandoned her clients, the Court does not believe that Respondent's neglect was so pronounced as to amount to abandonment as the term is often used in the disciplinary context. Although Respondent certainly should have formally ceased representing her clients, she did tell both Williamson and Bagley that she believed herself to be incapable of representing them.

The Court does believe, however, that the interests of public protection require a formal reinstatement proceeding before Respondent should once again be permitted to practice law. The Court is satisfied that a two-year suspension—which will require Respondent to petition for reinstatement and to demonstrate her rehabilitation and fitness to practice law—will protect the public here.

## V. *CONCLUSION*

In this matter, Respondent seriously neglected two clients' cases and engaged in other misconduct. Taking all of the circumstances into account, including the People's recommendation that Respondent serve a two- or three-year suspension, the Court concludes that a two-year suspension is appropriate.

24. *See, e.g., Williams*, 845 P.2d at 1152–53 (disbarring an attorney who neglected a matter, intentionally failed to carry out a contract of employment, and attempted to avoid service of process, where the hearing board found that the lawyer had abandoned his practice and where eight aggravating factors and no mitigators applied); *People v. Southern*, 832 P.2d 946, 946–48 (Colo.1992) (disbarring an attorney who neglected eight clients' cases and was dishonest, caus-

## VI. *ORDER*

The Court therefore **ORDERS**:

1. **RUTH MENDUS,** Attorney Registration Number 33343, is **SUSPENDED** from the practice of law in the State of Colorado for **TWO YEARS.** The **SUSPENSION SHALL** take effect only upon issuance of an "Order and Notice of Suspension." [25]

2. To the extent applicable, Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)–(c).

3. Within fourteen days after the effective date of the suspension, Respondent **SHALL** comply with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia, to notification of clients and of other jurisdictions where the attorney is licensed.

4. Any application for stay pending appeal **MUST** be filed with the Court **on or before November 4, 2015.** No extensions of time will be granted. Any response thereto **MUST** be filed within seven days.

5. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** file a "Statement of Costs" **on or before October 28, 2015.** Any response thereto **MUST** be filed within seven days.

ing actual serious injury to two clients, where aggravators significantly outweighed mitigators).

25. In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.