WILLIAM R. LUCERO, PRESIDING DISCIPLINARY JUDGE
*860 In May 2011, David Eugene Bath ("Respondent") was hired to represent a client in a personal injury matter. Respondent knew that his client had a medical lien for the treatment of her injuries. During the litigation, Respondent advanced his client over $19,000.00 for her living expenses. He eventually settled the personal injury case and distributed the settlement funds to himself and his client, rather than satisfying the lien. Respondent's misconduct warrants his suspension for two years.
I. PROCEDURAL HISTORY
Geanne R. Moroye, Office of Attorney Regulation Counsel ("the People"), filed a complaint with the Presiding Disciplinary Judge ("the Court") on June 26, 2017. On the same day, the People sent copies of the complaint to Respondent at his registered business and home addresses. He failed to answer, and the Court granted the People's motion for default on August 31, 2017. Upon the entry of default, the Court deemed all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[1]
On November 21, 2017, the Court held a sanctions hearing under C.R.C.P. 251.15(b). Moroye represented the People; Respondent appeared pro se.[2] The People's exhibits 1-7 were admitted into evidence, and the Court heard testimony from Danielle Garbo and Respondent.
II. ESTABLISHED FACTS AND RULE VIOLATIONS
Respondent took the oath of admission and was admitted on October 16, 1974, to practice law in Colorado under attorney registration number 05679. He is thus subject to the Court's jurisdiction in this disciplinary proceeding.[3]
On May 31, 2011, Mariyah Dana hired Respondent to represent her in a personal injury case arising from an automobile accident. In November 2011, Dana signed a medical lien assignment and authorization with Synergy Chiropractic Clinics.[4] The lien authorization stated, in part, that Dana and her attorney would honor and be bound by the lien. It also stated that should Dana or her attorney receive settlement funds, she or her attorney would immediately deliver the check to Synergy to be applied to Dana's medical debt. Respondent was listed as Dana's attorney in the lien authorization. Respondent was *861 aware of the lien authorization, but at Dana's request he did not sign the authorization.
On March 12, 2012, Danielle Garbo (formally Danielle Hopkins) sent Respondent an updated itemized statement of Dana's charges along with the notes from her chart.[5] The statement reflected charges of $1,530.00 for chiropractic services and $5,395.80 for physical therapy. Hopkins sent another updated bill in May 2012 for an additional $1,604.00 owed for rehabilitation services.
In December 2013, Dana settled her personal injury claim with the at-fault driver's insurance company for $60,000.00. The settlement agreement provided that Dana must satisfy any lien out of the settlement proceeds. On December 11, 2013, Dana received the settlement check payable to both Respondent and Dana.
Sometime thereafter, Respondent distributed the settlement funds to Dana. She signed a settlement disbursement sheet, indicating that she received a total of $18,082.17 from the settlement funds. The disbursement sheet also showed that Respondent received $20,000.00 in attorney's fees and $2,709.83 in advanced costs. Additionally, Respondent received $19,208.00 in reimbursement for funds he loaned Dana to help with her living expenses. Respondent advanced these funds in connection with Dana's pending litigation, and he expected reimbursement from the settlement proceeds. The distribution sheet also provided that Dana agreed with the distributions and that any future medical expenses were her responsibility. The statement listed several providers and balances, including $6,420.00 owed to Synergy.
In March 2014, Respondent sent a letter to Synergy requesting a breakdown of Dana's invoices and all outstanding charges.[6] The next month, a Synergy claims specialist emailed Respondent, stating that Dana owed a total of $9,629.80 to Synergy's various providers, including $1,100.00 owed to Douglas Hammond, M.D.
Respondent sent a letter on July 7, 2014, to Synergy's claims specialist, offering to settle Dana's balance for $6,420.00-a figure that reflected a reduction of one-third of the balance owed.[7] He asked for a response and indicated that he would "forward the check order on to [his] bookkeeper for processing."[8] This letter was signed by Leslie Cullip as claims negotiator for the David Bath Law Firm. This letter lead Synergy to believe that it would receive payment from Respondent for Dana's liens. Later that month, Synergy sent Respondent a fax, agreeing to accept $6,461.97 to settle Dana's claims.
Neither Respondent nor Dana made any payments to Synergy. In March 2016, Synergy wrote Respondent asking for the payment within ten days. Respondent did not respond or pay Synergy.
Through this conduct, Respondent violated Colo. RPC 1.8(e), which precludes a lawyer from providing financial assistance to a client in connection with a pending or contemplated litigation. He also violated Colo. RPC 1.15A(c), which requires a lawyer to keep separate any property in which two or more persons claim an interest until there is a resolution of the claims. Further, by representing to Synergy that he would pay Dana's medical lien and then failing to do so, Respondent violated Colo. RPC 8.4(c), which proscribes dishonest conduct.
III. SANCTIONS
The American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards ")[9] and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[10] When imposing a sanction after a finding of lawyer misconduct, *862 the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.
ABA Standard 3.0-Duty, Mental State, and Injury
Duty : Respondent violated duties he owed to his client to avoid conflicts of interest and to properly preserve disputed property. He also breached a duty of honesty that he owed to the public.[11]
Mental State : The Court's order entering default establishes that Respondent knowingly violated Colo. RPC 1.15A(c) : he knew about the terms of the lien authorization and Synergy's request for payment of the lien, yet he did not keep the disputed settlement funds in trust. Likewise, Respondent knowingly provided financial assistance to Dana in connection with the pending personal injury suit, as evidenced by his expectation of reimbursement from the settlement proceedings.
The Court does not agree with the People, however, that the order entering default establishes Respondent knowingly or intentionally violated Colo. RPC 8.4(c) when he failed to pay Synergy despite his written representation that he would do so.[12] First, the People's complaint does not expressly state that Respondent knowingly or intentionally engaged in dishonest conduct. Next, the established facts provide the following: that although Respondent made Synergy an offer of $6,420.00 to settle Dana's lien, he also told Synergy that upon receiving its acceptance of his offer he would forward the check to his bookkeeper for processing; that three weeks later, Synergy responded, agreeing to settle Dana's claims for a slightly different amount; and that Respondent did not respond to this communication, however, nor did he make any further representations of payment. These facts do not, by themselves, establish a knowing mental state.
Respondent further testified at the hearing that he did not pay the medical lien because his client told him not to, as she disputed the quality of the medical care.[13] At the time of the settlement Respondent also believed that because he did not sign the lien authorization he was not ultimately responsible for the lien. Accordingly, the Court concludes that Respondent acted negligently.
Injury : Respondent caused Dana potential injury by advancing to her substantial living expenses and expecting payment from the settlement. This advance gave Respondent a financial stake in the litigation. When Respondent failed to retain disputed settlement funds in his trust account and disregarded a known medical lien, Respondent financially injured Synergy. Garbo testified that none of Synergy's providers have been paid for Dana's treatment. Respondent's disbursement of the disputed settlement funds to Dana caused Synergy to file a collection action against Dana, causing financial injury to Dana.
ABA Standards 4.0-7.0-Presumptive Sanction
Here, suspension is the presumptive sanction under two applicable ABA Standards . ABA Standard 4.32 calls for suspension when a lawyer knows of a conflict of interest and does not fully disclose to the client the possible effect of that conflict, therefore causing the client injury or potential injury. Likewise, suspension is appropriate under ABA Standard 5.12 when a lawyer knows or should know he or she is dealing improperly with client property and causes injury or potential injury to a client. Private admonition, on the other hand, is appropriate under ABA Standard 5.14, which applies when a lawyer engages in any other conduct that *863 reflects adversely on the lawyer's fitness to practice.[14]
The Court is mindful that where multiple instances of attorney misconduct have occurred, the ABA Standards counsel that the ultimate sanction should at least be consistent with the sanction for the most serious disciplinary violation and generally should be greater than the sanction for the most serious misconduct.[15] Thus, the Court determines that suspension is the presumptive sanction.
ABA Standard 9.0-Aggravating and Mitigating Factors
Aggravating circumstances include any considerations or factors that may justify an increase in the degree of the presumptive sanction to be imposed, while mitigating circumstances may warrant a reduction in the severity of the sanction.[16] Six aggravating factors are present here: Respondent has three instances of prior discipline, he acted with a dishonest motive, he engaged in bad faith obstruction of the disciplinary proceeding, he refused to acknowledge the wrongful nature of his misconduct, he has substantial experience in the practice of law, and he has been indifferent to making restitution.[17] The Court is unaware of any mitigating factors.[18]
Analysis Under ABA Standards and Colorado Case Law
The Court recognizes the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[19] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[20] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.
The People request disbarment in this matter. This request is not supported by the applicable ABA Standards or Colorado case law, however. In People v. Harding , the Colorado Supreme Court accepted a conditional admission of misconduct and suspended a lawyer for one year and one day for his possession of attorney's fees in which another attorney claimed an interest.[21] Rather than holding the funds in trust, the attorney spent the funds.[22] Given the lawyer's four prior instances of discipline, the Colorado Supreme Court agreed that a lengthy suspension was warranted, even though three mitigating factors, including the presence of remorse and *864 other sanctions, applied.[23] In In re Fischer , the Colorado Supreme Court likewise suspended a lawyer for one year and one day for following his client's request to disburse funds in violation of a settlement agreement.[24] There, while only two aggravating factors were present, considerable evidence of mitigation was established, including the lawyer's full and free disclosure to the disciplinary board, his personal attempts to repair the damaged caused by his misconduct, and his excellent reputation in the legal community.[25]
Here, the presumptive sanction is suspension. Unlike in Harding and Fischer , however, no mitigating circumstances are present while six aggravating factors exist. Although the Court places relatively little weight on two of those factors, Respondent has a significant disciplinary history, he has refused to acknowledge his misconduct-particularly in light of the clear prohibition in the Rules of Professional Conduct against providing financial assistance to a client in connection with a pending litigation and the requirement that lawyers must keep disputed funds in trust-and he has failed to take steps to make any restitution to Synergy. Taking into consideration the number of aggravators and lack of mitigators, the Court suspends Respondent for two years.
IV. CONCLUSION
Respondent disbursed settlement funds even though he knew of Synergy's medical lien, and he advanced substantial living expenses to his client during the representation. He also made negligent misrepresentations about his intentions to pay the lien. His misconduct must be met with a suspension of two years.
V. ORDER
The Court therefore ORDERS:
1. DAVID EUGENE BATH , attorney registration number 05679 , will be SUSPENDED FROM THE PRACTICE OF LAW FOR TWO YEARS . The SUSPENSION SHALL take effect only upon issuance of an "Order and Notice of Suspension."[26]
2. Respondent SHALL promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.
3. Respondent also SHALL file with the Court, within fourteen days of issuance of the "Order and Notice of Suspension," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.
4. The parties MUST file any posthearing motions on or before Tuesday, January 30, 2018 . Any response thereto MUST be filed within seven days.
5. The parties MUST file any application for stay pending appeal on or before Tuesday, February 6, 2018 . Any response thereto MUST be filed within seven days.
6. Respondent SHALL pay the costs of this proceeding. The People SHALL file a statement of costs on or before Tuesday, January 30, 2018 . Any response thereto MUST be filed within seven days.[27]

See C.R.C.P. 251.15(b) ; People v. Richards , 748 P.2d 341, 346 (Colo. 1987).

Respondent arrived at the hearing forty-five minutes late. Though he thought he had answered the People's complaint, it appears that Respondent mistakenly believed that his response to the People's request for investigation satisfied his obligation to answer.

See C.R.C.P. 251.1(b).

See also Exs. 3-5.

Garbo is referred to as Hopkins in the People's complaint. Garbo testified that she was Synergy's billing administrator from August 2005 to October 2017. She also stated that Synergy employs many doctors and other health practitioners under one roof to treat patients for accident-related injuries.

See also Ex. 7.

See also Ex. 6.

Compl. ¶ 16; see also Ex. 6.

Found in ABA Annotated Standards for Imposing Lawyer Sanctions (2015).

See In re Roose, 69 P.3d 43, 46-47 (Colo. 2003).

See ABA Standard 5.0.

See People's Hr'g Br. at 6.

Even though Respondent defaulted in this case, he was permitted to testify at the hearing about the appropriate sanction, including a statement as to his mental state and injury. Separate and apart from his testimony, however, the Court finds that the complaint fails to establish that Respondent acted knowingly or intentionally in violation of Colo. RPC 8.4(c).

Because the Court concluded that Respondent did not knowingly or intentionally engage in dishonest conduct, it declines to apply ABA Standard 5.11(b) as the People urge and, instead, finds ABA Standard 5.14 fitting under the circumstances.

ABA Annotated Standards at xx.

See ABA Standards 9.21 & 9.31.

ABA Standards 9.22(a)-(b), (e), (g), and (i)-(j). Although the People ask for application of ABA Standard 9.21(c) (pattern of misconduct), the Court declines to apply this factor in aggravation. The Court does not agree with the People that the entry of default established that Respondent engaged in a pattern of repeated misrepresentations to Synergy. In addition, the Court chooses to place relatively little weight on the aggravating factors of dishonest motive and bad faith obstruction of the disciplinary process. The Court concluded that Respondent only negligently violated Colo. RPC 8.4(c). Further, Respondent mistakenly believed he answered the People's complaint; despite this, the Court chooses to apply this factor-albeit only lightly-because Respondent offered no explanation as to why he failed to participate from that time forward in the proceeding even though he received documents from the People and the Court.

Respondent stated at the hearing that he has high blood pressure and declining health, but he did not testify that any of those health issues were present at the time of his misconduct, nor did he offer proof of any causal connection between his misconduct and his declining health. Accordingly, the Court does not apply ABA Standard 9.32(c) in mitigation.

See In re Attorney F. , 285 P.3d 322, 327 (Colo. 2012) ; In re Fischer , 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

In re Attorney F. , 285 P.3d at 327 (quoting In re Rosen , 198 P.3d 116, 121 (Colo. 2008) ).

967 P.2d 153, 154-55 (Colo. 1999).

Id .

Id . at 155.

89 P.3d 817, 819, 822 (Colo. 2004).

Id . at 821-22.

In general, an order and notice of sanction will issue thirty-five days after a decision is entered under C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

Respondent asked that his sister also be included in the certificate of mailing.