WILLIAM R. LUCERO, PRESIDING DISCIPLINARY JUDGE
In June 2013, Jerold R. Gilbert ("Respondent") agreed to assist clients in an immigration matter for a capped fee, the vast majority of which the clients paid him in the first four months of the representation. But Respondent did not hold the money in trust, instead retaining all the funds for himself, even though he did not complete of the promised work. In May 2014, Respondent was administratively suspended from the practice of law. He did not inform his clients of the suspension, however, nor did he cease practicing law. Instead, on at least one occasion following his suspension, he provided his clients with legal advice in derogation of his suspension order. Later, Respondent stopped communicating with his clients. He did not respond to their inquiries or to their requests for a copy of the fee agreement and receipts. Because Respondent failed to complete agreed-upon work, converted unearned fees, and practiced law while administratively suspended, he must be disbarred.
I. PROCEDURAL HISTORY
On June 19, 2017, Sara Cantrick Van Deusen, Office of Attorney Regulation Counsel ("the People"), filed a complaint with the Presiding Disciplinary Judge ("the Court"). The next day, the People sent copies of the complaint to Respondent via certified mail at his registered business address as well as to his last-known address.[1] Respondent failed to answer, and the Court granted the People's motion for default on August 31, 2017. Upon the entry of default, the Court deemed all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[2]
On November 13, 2017, the Court held a sanctions hearing under C.R.C.P. 251.15(b). Van Deusen represented the People; Respondent did not appear. At the sanctions hearing, Jennie Rico testified and the People's exhibits 1-2 were admitted into evidence.
II. ESTABLISHED FACTS AND RULE VIOLATIONS
Respondent took the oath of admission and was admitted to practice law by in Colorado on March 29, 1991, under attorney registration number 20301. He is thus subject to the Court's jurisdiction in this disciplinary proceeding.[3]
On June 23, 2013, Jennie Rico and her husband, Johnny Rodriguez, retained Respondent to assist them with an immigration matter. The fee agreement states, in relevant part, that Respondent would:
Represent client on behalf of Jennie Rico to file Form I-130 ... file Form I-601A and accompanying additional forms to accomplish the goal of a Permanent Resident Via for Johnny Rico. Firm will reevaluate status of application to determine if Form I-485 Adjustment of Status will be available.[4]
The fee agreement states that these services, in total, would cost $3,000.00, and that Respondent would charge $200.00 per hour. The payment terms provided that "Client pays $1,000 today and the balance as follows: $1,000 on 7/28/2013 and $1,000.00 on 8/28/2013."[5] Rico and Rodriguez made three cash payments totaling $2,750.00: $1,000.00 each on June 28 and July 26, 2013, and $750.00 on September 6, 2013. Respondent did not deposit any of these funds into his trust account. Nor did he provide Rico or Rodriguez with any invoices showing when he performed legal work or when he earned legal fees.
Respondent worked on Rodriguez's Form I-130 between November 2013 and April 2014. On April 4, 2014, Respondent filed Form I-130 by U.S. priority mail. The form reflects that it was completed on December 12, 2013.
On May 1, 2014, Respondent was administratively suspended from the practice of law. He has remained suspended since that time. Even though C.R.C.P. 251.28(b) mandates that lawyers notify clients by certified mail of any suspension imposed, Respondent never informed Rico or Rodriguez of his suspension how the suspension affected his ability to continue to represent them.
On October 16, 2014, Rico emailed Respondent, noting that she had called him five times yet had not received a return call. Respondent replied the same day:
I am very busy right now doing DACA renewal applications ... the USCIS [United States Citizenship and Immigration Services] is currently processing your file and the time they are taking is normal. I am not concerned about it right now. They will send letters telling us what they decide or they might request more info. After the visa is issued we will begin to Adjust Status. So for now we wait.[6]
On August 10, 2015, Rico received a letter from USCIS requesting more evidence to support the Form I-130. Rico called Respondent to discuss the letter, but he informed her that he was closing his law practice and would no longer represent her or her husband. On October 2, 2015, Respondent emailed the couple, noting that they spoke by phone on September 30, 2015, and stating, "As I said to you in our last telephone conversation, I must withdraw as your legal *851 counsel in this matter. I do this because of my continued ill health and the resulting physical disabilities it has presented me."[7]
Rico responded, requesting a copy of the fee agreement and receipts for the payments the couple had made, but after October 2, 2015, neither Rico nor Rodriguez received any communications from Respondent.
Through this misconduct, Respondent violated Colo. RPC 1.4(a)(3), which provides that a lawyer must keep a client reasonably informed about the status of a matter; Colo. RPC 1.4(a)(4), which provides that a lawyer must promptly comply with reasonable requests for information; Colo. RPC 1.5(f), which provides that fees are not earned until the lawyer confers a benefit on the client or performs a legal service for the client, and that advances of unearned fees are the client's and must be deposited in the lawyer's trust account; Colo. RPC 1.15A(a), which provides that a lawyer must hold client property separate from the lawyer's own property; Colo. RPC 1.16(d), which provides that a lawyer must promptly deliver to a client funds or other property that the client is entitled to receive; Colo. RPC 3.4(c), which provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists; Colo. RPC 5.5(a)(1), which provides that a lawyer shall not practice law in this jurisdiction without a valid license; and Colo. RPC 8.4(c), which provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
III. SANCTIONS
The American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards ")[8] and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[9] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.
ABA Standard 3.0-Duty, Mental State, and Injury
Duty : Respondent, who evinced no accountability to his clients, violated duties to Rico and Rodriguez by failing to communicate with them about his administrative suspension, failing to safeguard their property and return unearned funds, and failing to respond to their requests for receipts and a copy of the fee agreement. Respondent also violated duties he owed to the legal system by failing to comply with rules governing lawyers' conduct following an administrative suspension. Further, he violated duties owed to the legal profession by practicing law while under administrative suspension.
Mental State : Respondent knowingly failed to notify Rico and Rodriguez of his administrative suspension and knowingly continued to provide them legal advice. He also knowingly failed to deposit unearned client funds into trust, knowingly refused to return unearned funds, and knowingly failed to respond to client requests at the conclusion of the representation.
Injury : Respondent harmed his clients' legal interests. He failed to perform the work that he agreed to complete, providing them no benefit. As Rico explained, Respondent's lack of communication, in part, meant that too much time elapsed before they responded to USCIS, and their I-130 form expired, forcing the couple to begin the process all over again. Further, Respondent never began work on Form I-601A. Even so, he never returned unearned fees, financially injuring Rico and Rodriguez, who are strapped for extra funds. Indeed, the couple is still saving money to retain a new lawyer. Respondent also undermined Rico's faith in the legal profession. She stated that she finds it "hard to trust any lawyers at the moment," worried, as she is, that lawyers will simply take *852 her family's money and then "run." And Respondent caused harm to the legal profession by continuing to practice law in contravention of a court order administratively suspending him.
ABA Standards 4.0-7.0-Presumptive Sanction
Several ABA Standards arguably apply here, but the Court focuses on ABA Standard 4.11, which presumptively calls for disbarment when a lawyer knowingly converts client property and causes injury or potential injury to a client. Though ABA Standards governing other types of Respondent's misconduct identify suspension as the presumptive sanction-for example, ABA Standard 4.42 applies for knowingly failing to perform services for a client, ABA Standard 6.22 applies for knowingly violating a court order or rule, and ABA Standard 7.22 applies for knowingly engaging in conduct that violates a professional legal duty-the Court pegs disbarment as the presumptive sanction in this case because "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct."[10]
ABA Standard 9.0-Aggravating and Mitigating Factors
Aggravating circumstances include any considerations or factors that may justify an increase in the degree of the presumptive sanction to be imposed, while mitigating circumstances may warrant a reduction in the severity of the sanction.[11] Three aggravating factors are present here: Respondent's dishonest or selfish motive, his multiple types of offenses, and his substantial experience in the practice of law.[12] The Court is aware of just two mitigating factors: Respondent's absence of prior discipline, and his personal or emotional problems.[13]
Analysis Under ABA Standards and Colorado Case Law
The Court recognizes the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[14] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[15] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.
The presumptive sanction for conversion of funds is disbarment, a presumption that ought not be overturned unless mitigating factors predominate.[16] Here, Respondent acted dishonestly and selfishly by keeping $2,750.00 of his clients' money without completing a meaningful portion of the agreed-upon work. Though Respondent did file Form I-130, that form was incomplete, and he never began work on the promised Form I-601A. Contrary to the fee agreement and to Colo. RPC 1.5(f) and 1.15A(a), he never deposited any of the couple's payments in his trust account, and he never accounted for or returned any unearned fees. He compounded this misconduct by failing to advise his clients of his administrative suspension and by disobeying court orders forbidding him from practicing law while suspended. Given the presumptive sanction for knowing conversion, *853 the other serious misconduct in which Respondent engaged, and the lack of significant mitigation, the Court concludes that Respondent should be disbarred.
IV. CONCLUSION
Taken together, Respondent's failure to complete agreed-upon work, disregard of client inquiries, improper handling of client property, conversion of unearned fees, and disobedience of his administrative suspension order warrant his disbarment.
V. ORDER
The Court therefore ORDERS:
1. JEROLD R. GILBERT , attorney registration number 20301 , will be DISBARRED FROM THE PRACTICE OF LAW . The DISBARMENT SHALL take effect only upon issuance of an "Order and Notice of Disbarment."[17]
2. To the extent applicable, Respondent SHALL promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.
3. Respondent also SHALL file with the Court, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.
4. The parties MUST file any posthearing motions on or before Monday, January 22, 2018 . Any response thereto MUST be filed within seven days.
5. The parties MUST file any application for stay pending appeal on or before Monday, January 29, 2018 . Any response thereto MUST be filed within seven days.
6. Respondent SHALL pay the costs of this proceeding. The People SHALL file a statement of costs on or before Monday, January 22, 2018 . Any response thereto MUST be filed within seven days.

Mot. for Default Ex. 1.

See C.R.C.P. 251.15(b) ; People v. Richards , 748 P.2d 341, 346 (Colo. 1987).

See C.R.C.P. 251.1(b).

Compl. ¶ 2.

Compl. ¶ 3.

Compl. ¶ 14.

Compl. ¶ 17.

Found in ABA Annotated Standards for Imposing Lawyer Sanctions (2015).

See In re Roose, 69 P.3d 43, 46-47 (Colo. 2003).

ABA Annotated Standards for Imposing Lawyer Sanctions xx.

See ABA Standards 9.21 & 9.31.

ABA Standards 9.22(b), (d), and (i).

ABA Standards 9.32(a) and (c). Though the Court accords Respondent mitigating credit for personal and emotional problems, it grants this factor relatively little weight, as evidence of such problems is patchy, at best.

See In re Attorney F. , 285 P.3d 322, 327 (Colo. 2012) ; In re Fischer , 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

In re Attorney F. , 285 P.3d at 327 (quoting In re Rosen , 198 P.3d 116, 121 (Colo. 2008) ).

See, e.g., People v. Varallo , 913 P.2d 1, 10-12 (Colo. 1996).

In general, an order and notice of sanction will issue thirty-five days after a decision is entered under C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.