WILLIAM R. LUCERO PRESIDING DISCIPLINARY JUDGE
*845 In the course of two domestic relations cases, Leah Rae Bishop ("Respondent") abdicated her duties to her clients, the courts, and the legal profession. She failed to diligently represent her clients, ignored court orders, refused to timely return files and funds owed to her clients, knowingly converted client funds, and then disregarded requests for information from disciplinary authorities. Respondent's violation of Colo. RPC 1.3, 1.4(a)(3), 1.4(a)(4), 1.16(d), 3.4(c), 8.1(b), 8.4(c), and 8.4(d) warrants disbarment.
I. PROCEDURAL HISTORY
Geanne R. Moroye, Office of Attorney Regulation Counsel ("the People"), filed a complaint with Presiding Disciplinary Judge William R. Lucero ("the Court") on June 23, 2017. The People sent a copy of the complaint the same day to Respondent's registered business address. Respondent failed to answer. By order dated August 31, 2017, the Court entered default, thereby deeming admitted the allegations and rule violations set forth in the complaint.
On November 28, 2017, the Court held a sanctions hearing under C.R.C.P. 251.15(b). Moroye represented the People; Respondent did not appear. The People's exhibits 1-3 were admitted into evidence, and the Court heard testimony from Erica Lopez.
II. ESTABLISHED FACTS AND RULE VIOLATIONS
The Court adopts and incorporates by reference the averments in the admitted complaint, presented here in condensed form. Respondent took the oath of admission and was admitted to practice law in Colorado on November 2, 1999, under attorney registration number 31377. She is thus subject to the Court's jurisdiction in this disciplinary proceeding.[1]
Lopez Matter
Erika Lopez retained Respondent for assistance with post-decree child support and parenting time issues. In February 2016, Lopez and Respondent entered into a written fee agreement providing for an hourly rate of $200.00, and Lopez gave Respondent a $1,500.00 retainer. Respondent deposited Lopez's $1,500.00 retainer into her COLTAF account on February 12, 2016.
A hearing on child support issues was scheduled for April 19, 2016, in Weld County District Court. Respondent entered her appearance and met twice with Lopez before the scheduled hearing date. Respondent also, however, failed to respond to several of Lopez's communications. On April 17, Lopez learned from Respondent that the April 19 hearing had been vacated. Lopez told Respondent her preferred dates to reschedule the hearing, but she heard nothing in response. Respondent then failed to respond to Lopez's follow-up inquiry about the rescheduling.
On May 4, 2016, Lopez learned from her lawyer in a separate dependency and neglect representation that a minute order had been entered on May 2 in the child support case. That lawyer could not access the details of the minute order. Lopez asked Respondent about the order but did not immediately receive an explanation. On May 5, Lopez drove to the courthouse and obtained a copy of the minute order. The order stated that a hearing had been held on May 2 without Lopez's participation. The order further stated that the court had found a substantial and continuing change in circumstances, warranting a reduction in child support from $826.79 to $358.32.
When Lopez called Respondent, she promised to file a motion with the court. On May 7, Respondent wrote to Lopez, admitting she *846 had "made a terrible mistake" and would "take responsibility."[2] She again pledged to file a motion. Respondent emailed Lopez the next day, indicating that the motion was attached. Lopez could not open the attachment and asked Respondent to resend it. On May 10, Respondent texted Lopez, asking if she had reviewed the motion. Lopez reminded Respondent that she had asked her to resend the attachment. Respondent did not respond.
On May 19, 2016, Lopez filed a pro se motion, apologizing for not appearing at the May 2 hearing and asking the court to reconsider its order and to reschedule the child support hearing. That same day, Lopez asked Respondent to return her retainer and her financial documents and to withdraw from the case. Lopez repeated that request on May 23.
On May 24, counsel for Lopez's ex-husband filed an objection to Lopez's pro se motion, stating that all parties had agreed to the May 2 hearing date. Lopez filed a pro se response the next day. She stated that Respondent had not responded to her request to return her documents and to withdraw from the case. On June 2, the court ordered Respondent to give Lopez, within two weeks, all communications about the setting of the hearing on May 2. The court also ordered Respondent to withdraw from the representation and to return Lopez's documents. Respondent did not comply with the order.
On August 5, 2016, the court ordered Respondent to show cause why she had failed to withdraw and to return Lopez's documents. The court set a hearing on the order for August 8. Respondent failed to appear. The court issued another show cause order to Respondent with a hearing date of September 22, and directed that the order and a subpoena duces tecum be personally served on Respondent.
Respondent appeared for the hearing on September 22. She returned Lopez's file to Lopez. The court reprimanded Respondent and directed her to withdraw at the clerk's office after the hearing. She did not do so.
By May 31, 2016, Respondent's COLTAF account balance was $230.87, indicating that she had withdrawn $1,200.00 of the retainer. Respondent never refunded any portion of Lopez's retainer, nor did she account for the funds she kept. She converted money from Lopez by exercising dominion over funds to which she was not entitled.
In August 2016, the People sent Respondent two letters requesting a response to the request for investigation in this case. Those letters went unanswered. The People also left Respondent multiple phone messages in 2016 and 2017, which similarly went unreturned.
In the Lopez representation, Respondent violated Colo. RPC 1.3, which directs a lawyer to act with reasonable diligence and promptness when representing a client; Colo. RPC 1.4(a)(3), which requires that a lawyer keep a client reasonably informed about the status of the matter; Colo. RPC 1.4(a)(4), which requires a lawyer to promptly comply with reasonable requests for information; Colo. RPC 1.16(d), which provides that a lawyer shall protect a client's interests upon termination of the representation, including by returning unearned fees and any papers and property to which the client is entitled; Colo. RPC 3.4(c), which prohibits a lawyer from knowingly disobeying an obligation under the rules of a tribunal; Colo. RPC 8.1(b), which states that a lawyer shall not knowingly fail to respond to a lawful demand for information from a disciplinary authority; Colo. RPC 8.4(c), which interdicts conduct involving dishonesty, fraud, deceit, or misrepresentation; and Colo. RPC 8.4(d), which states that a lawyer shall not engage in conduct prejudicial to the administration of justice.
Meng Matter
On April 18, 2016, Scott Meng hired Respondent for representation in a dissolution action pending in Larimer County District Court. Meng had filed a petition for dissolution the month prior. Meng does not recall whether he and Respondent executed a fee agreement, but he does remember that Respondent required a retainer of $2,500.00 and charged an hourly rate of $250.00.
*847 Respondent entered her appearance in the case on April 18, the day she was retained. The next day, she and Meng attended an initial status conference at which the court ordered the parties to mediate the matter. Meng paid Respondent her $2,500.00 retainer on April 21.
Respondent failed to provide disclosures in Meng's case that were due April 26, 2016. On May 3, opposing counsel filed a mediation status report, stating that multiple attempts to contact Respondent to set mediation had been unsuccessful. The court set a status conference for May 17, but Respondent failed to participate. The status conference was vacated, and the court directed Respondent to submit a new notice to set. Respondent filed a motion for temporary orders, a response to the mediation status report, and a notice to set. The parties attended mediation on June 3, but the case was not resolved. Respondent was paid an additional $250.00 for the mediation. On June 10, she filed a certificate of compliance under C.R.C.P. 16.2. The parties filed a joint position statement three days later. Respondent acknowledged that she had not yet provided complete financial information and stated that she would do so by June 17.
Respondent then cancelled multiple meetings with Meng. In the latter part of June, Meng asked her to withdraw, to return his file, and to refund him $1,700.00. Respondent pledged to immediately return his file. Respondent did move to withdraw on July 8, but she did not send Meng his file. On July 15, opposing counsel filed a motion to compel based on outstanding discovery requests. That day, Meng again requested that Respondent return his file. He wrote to the court on July 19, saying he had been unable to obtain his file and financial information from Respondent and that he had not been adequately informed about his case. Respondent's motion to withdraw was granted on July 26.
Respondent never provided an accounting of her fees, nor did she refund any portion of Meng's fees. She deposited his $2,500.00 retainer into her COLTAF account, and the account balance was $230.87 on May 5, 2016, indicating that she had withdrawn $2,269.13 of the retainer. She exercised dominion over client funds to which she was not entitled, thereby converting those funds.
Although the People attempted to contact Respondent about the request for investigation multiple times in 2016 and 2017, both by mail and by phone, she never responded.
In the Meng representation, Respondent violated Colo. RPC 1.3, 1.16(d), 8.1(b), and 8.4(c).
III. SANCTIONS
The American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards ")[3] and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[4] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.
ABA Standard 3.0-Duty, Mental State, and Injury
Duty : By converting funds, failing to exercise diligence, neglecting to communicate, and failing to timely return client files, Respondent violated her duties to her clients. Respondent's defiance of court orders and her conduct that prejudiced the administration of justice violated her duties to the legal system. Last, her failure to respond to disciplinary authorities reflected a disregard of her duties to the profession.
Mental State : The entry of default in this case established as a matter of law that Respondent knowingly violated Colo. RPC 3.4(c) and 8.1(b). The admitted facts in this matter, coupled with Respondent's failure to put forth any defense, support the inference that she knowingly committed the other misconduct in this case.
Injury : Respondent harmed the court system by ignoring court orders and wasting *848 judicial resources in the Lopez matter. She caused potential harm to the disciplinary system by failing to respond to requests for investigation in both matters. Most serious, Respondent harmed her clients by failing to exercise diligence, failing to communicate with them, and refusing to return their files and funds.
At the sanctions hearing, Lopez testified that Respondent caused her "tremendous emotional harm." Respondent's misconduct occurred during the prosecution of Lopez's ex-husband on charges that he sexually abused Lopez's minor daughters, and Lopez said she was counting on Respondent. Lopez calculated the total financial injury she suffered as a result of Respondent's misconduct at more than $15,000.00. She explained that she lost her $1,500.00 retainer, substantial child support payments, and the opportunity to seek an order requiring her ex-husband to pay funds related to her children's medical care and medical insurance. Lopez testified that although she had always respected lawyers-and indeed comes from a family of lawyers-she now would do "anything" to avoid ever having to retain a lawyer again.
ABA Standards 4.0-7.0-Presumptive Sanction
Disbarment is the presumptive sanction for Respondent's knowing conversion of funds from two clients under ABA Standard 4.11, which calls for disbarment where a lawyer knowingly converts client property, thereby causing a client injury or potential injury. Given the clear applicability of Standard 4.11, it is unnecessary to review the multiple other applicable standards here.
ABA Standard 9.0-Aggravating and Mitigating Factors
Aggravating circumstances include any considerations or factors that may justify an increase in the degree of the presumptive sanction to be imposed, while mitigating circumstances may warrant a reduction in the severity of the sanction.[5] Five factors aggravate Respondent's misconduct: she acted with a dishonest motive, she engaged in a pattern of misconduct, she committed multiple separate offenses, she has substantial experience in the practice of law, and she has exhibited indifference to making restitution.[6] The Court is aware of but one mitigator: Respondent has not previously been disciplined.[7]
Analysis Under ABA Standards and Colorado Case Law
The Court understands the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[8] recognizing that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[9] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.
Disbarment is, without question, the appropriate sanction in this case. The Colorado Supreme Court has repeatedly held that knowing conversion of client funds warrants disbarment, except where substantial mitigating factors are present.[10] Here, Respondent knowingly converted funds from two clients, in addition to other serious misconduct, and the aggravating factors greatly outweigh the sole mitigating factor. Thus, the settled case law, coupled with the presumptive sanction and the predominance of aggravating factors, supports imposition of disbarment.
*849 IV. CONCLUSION
Respondent committed a wide array of misconduct in two client representations, most notably by knowingly converting funds from her clients. Her misconduct is answered with the sanction of disbarment.
V. ORDER
The Court therefore ORDERS :
1. LEAH RAE BISHOP , attorney registration number 31377 , will be DISBARRED FROM THE PRACTICE OF LAW . The DISBARMENT SHALL take effect only upon issuance of an "Order and Notice of Disbarment."[11]
2. To the extent applicable, Respondent SHALL promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.
3. Respondent also SHALL file with the Court, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.
4. The parties MUST file any posthearing motion on or before Tuesday, January 23, 2018 . Any response thereto MUST be filed within seven days.
5. The parties MUST file any application for stay pending appeal on or before Tuesday, January 30, 2018 . Any response thereto MUST be filed within seven days.
6. Respondent SHALL pay the costs of this proceeding. The People SHALL submit a statement of costs on or before Tuesday, January 23, 2018 . Any response thereto MUST be filed within seven days.
7. Respondent SHALL pay restitution to Erika Lopez in the amount of $1,500.00 and to Scott Meng in the amount of $1,700.00 on or before Tuesday, February 6, 2018 . If Lopez and Meng have received payments of restitution from the Attorneys' Fund for Client Protection, Respondent must direct her payments of restitution to the Fund rather than the clients. Payment of these amounts in restitution is a precondition to Respondent filing any petition for readmission to practice law.

See C.R.C.P. 251.1(b).

Compl. ¶ 20.

Found in ABA Annotated Standards for Imposing Lawyer Sanctions (2015).

See In re Roose, 69 P.3d 43, 46-47 (Colo. 2003).

See ABA Standards 9.21 & 9.31.

ABA Standards 9.22(b)-(d) and (i)-(j).

ABA Standard 9.32(a).

See In re Attorney F. , 285 P.3d 322, 327 (Colo. 2012) ; In re Fischer , 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

In re Attorney F. , 285 P.3d at 327 (quoting In re Rosen , 198 P.3d 116, 121 (Colo. 2008) ).

See, e.g., People v. Varallo , 913 P.2d 1, 10-12 (Colo. 1996).

In general, an order and notice of disbarment will issue thirty-five days after a decision is entered under C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.