WILLIAM R. LUCERO, PRESIDING DISCIPLINARY JUDGE
Richard O. Schroeder ("Respondent") was hired to pursue collection matters for another lawyer. Respondent failed to timely deliver funds that the other lawyer was owed in three separate collection matters. In one of those matters, Respondent also made a misrepresentation on his disbursement statement and knowingly converted funds. Respondent's conduct in violation of Colo. RPC 1.3, 1.4(a)(3), 1.15A(a), 1.15A(b), and 8.4(c) warrants disbarment.
I. PROCEDURAL HISTORY
Sara Cantrick Van Deusen, Office of Attorney Regulation Counsel ("the People"), filed a complaint with Presiding Disciplinary Judge William R. Lucero ("the Court") on June 21, 2017. The People sent a copy of the complaint to Respondent's registered business address. Respondent failed to file an answer. By order dated September 1, 2017, the Court entered default, thereby deeming admitted the allegations and claims in the complaint.
On November 14, 2017, the Court held a sanctions hearing under C.R.C.P. 251.15(b). Van Deusen represented the People; Respondent did not appear. The People's exhibits 1 and 15 were admitted into evidence, and the Court heard Glenn W. Hagen's testimony by telephone.
II. ESTABLISHED FACTS AND RULE VIOLATIONS
The Court adopts and incorporates by reference the averments in the admitted complaint, presented here in condensed form. Respondent took the oath of admission and was admitted to practice law in Colorado on October 30, 1996, under attorney registration number 27616. He is thus subject to the Court's jurisdiction in this disciplinary proceeding.[1]
This case arises out of Respondent's representation of Glenn W. Hagen, P.C. Respondent executed a contingent fee agreement with Glenn W. Hagen-the sole shareholder in Glenn W. Hagen, P.C.-for legal services related to collecting delinquent accounts receivable for Hagen. Under the agreement, Respondent was to receive the following fees: 1) 33.3% of all amounts received before preparation of disclosures in a matter; 2) 45% of all amounts received after preparation of disclosures, until sixty days before trial; and 3) 50% of all amounts received within sixty days of trial. Respondent assisted Hagen with a *856 number of collection matters, including three such matters addressed below.
In the first matter, Respondent filed a complaint on behalf of Hagen's firm against Elizabeth Bodde in June 2014. The next month, the court entered judgment in favor of Hagen's firm in the principal amount of $3,762.00 with postjudgment interest at the rate of 18% annum. On June 11, 2015, the court ordered Bodde's bank to issue a check to Respondent in the amount of $4,457.49. Respondent's COLTAF records show that a deposit in that amount was made on June 16, 2015.
Because the Bodde case was resolved before disclosures were prepared, the total owed to Hagen after subtracting Respondent's fee was $2,971.66. Although Respondent was in possession of those funds as of June 16, 2015, he did not issue any disbursement statement or check to Hagen until December 1, 2015. As to the delay, Respondent stated that he was frustrated with Hagen's attitude at times, that he perceived Hagen's tone as bullying, and that he believed Hagen might respond more quickly to his requests for information if Hagen knew he was holding the funds.
On December 1, 2015, Respondent sent Hagen a check in the amount of $681.46. In fact, Hagen was owed more than that sum because Respondent's disbursement statement listed expenses that he had not yet incurred. But the parties' fee agreement only permitted Respondent to deduct costs he had actually incurred. Accordingly, Respondent should have disbursed $1,531.46. Respondent learned in April 2016 that Hagen had filed a grievance; in a letter sent to the People that same month, Respondent admitted that the $850.00 in anticipated expenses should be refunded to Hagen. But Respondent did not pay Hagen the $850.00 until March 2017.
In addition, Respondent's COLTAF records show that on three separate occasions during the period he was holding Hagen's funds in the Bodde matter, Respondent's account balance dropped below the amount owed Hagen. During those periods, multiple transfers were made from Respondent's COLTAF accounts to his operating and personal accounts.
In the second collection matter, Respondent filed a complaint against William Jackson on behalf of Hagen's firm in November 2015. Jackson soon agreed to resolve the matter by making six consecutive payments in the amount of $458.33. On June 8, 2016, Respondent received the last of Jackson's payments in the form of a check made out to Hagen. Respondent did not inform Hagen of the check's existence. He only sent the check to Hagen in February 2017, after Respondent's interview with disciplinary authorities. Due to the check's age, Hagen could not negotiate it. Respondent paid Hagen the funds he was owed in the Jackson matter in May 2017.
The third collection matter commenced in June 2014, when Respondent sued Cynthia Long on behalf of Hagen's firm. Judgment entered in favor of Hagen's firm on June 11, 2015, in the amount of $16,117.28. Because the case was resolved following a hearing, Hagen was owed $8,058.64. According to the disbursement statement in the matter, costs totaled $84.56, leaving a balance owed to Hagen of $7,974.08.
It is unknown when Long paid Respondent the funds owed for the judgment. But between April and September 2016 Respondent issued three cashier's checks from his COLTAF account payable to Hagen's firm totaling $7,974.08, the exact amount owed to Hagen in the Long matter. Respondent did not inform Hagen that the checks had been issued, and he did not send Hagen those checks until February 2017, after his interview with disciplinary authorities and after he had notice of Hagen's grievance. The checks all state "VOID AFTER 90 DAYS" on their face, and Hagen was unable to negotiate them. Respondent ultimately sent Hagen the funds owed in this matter in May 2017.
In the Hagen representation, Respondent violated five Rules of Professional Conduct:
• Respondent violated Colo. RPC 1.3, which requires a lawyer to act with reasonable diligence and promptness when representing a client, by failing to timely deliver to Hagen the funds he *857 was owed in all three collection matters.
• By making inaccurate statements on the Bodde disbursement statement and failing to inform Hagen that he was holding funds payable to him in the Jackson and Long matters, Respondent transgressed Colo. RPC 1.4(a)(3), which provides that a lawyer shall keep a client reasonably informed about the status of a matter.
• Respondent violated Colo. RPC 1.15A(a), which requires a lawyer to hold client property separate from the lawyer's own property, when he transferred funds owed to Hagen in the Bodde matter into his own operating account.
• By failing to timely deliver to Hagen the funds he was owed in the Jackson and Long matters, Respondent transgressed Colo. RPC 1.15A(b), which provides that upon receiving funds or other property of a client, a lawyer shall promptly deliver to the client any funds or property that person is entitled to receive.
• Respondent violated Colo. RPC 8.4(c), which interdicts conduct involving dishonesty, fraud, deceit, or misrepresentation, in three ways: by transferring funds owed to Hagen in the Bodde matter into Respondent's own operating account; by stating on the Bodde disbursement statement that he had incurred costs that were not yet incurred and then deducting that amount from the funds paid to Hagen; and by failing to disburse funds owed to Hagen in the Jackson and Long matters without telling Hagen that the funds were available.
III. SANCTIONS
The American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards ")[2] and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[3] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.
ABA Standard 3.0-Duty, Mental State, and Injury
Duty : By converting funds, making misrepresentations, failing to exercise diligence, failing to communicate with Hagen, and failing to safeguard Hagen's property, Respondent violated his duties to his client.
Mental State : The admitted facts in this matter show that Respondent knowingly committed the misconduct at issue in this case.
Injury : At the sanctions hearing, Hagen testified that Respondent's delay in transmitting funds greatly affected him. Hagen explained that he has experienced medical problems in the last few years, leading to a shift in his law practice and a diminished cash flow. Hagen has had to use lines of credit and close a life insurance policy. Respondent's conduct thus caused Hagen to suffer financially and to experience great frustration.
ABA Standards 4.0-7.0-Presumptive Sanction
Disbarment is the presumptive sanction here for Respondent's knowing conversion of funds belonging to Hagen in the Bodde matter. ABA Standard 4.11 calls for disbarment where a lawyer knowingly converts client property, thereby causing a client injury or potential injury. At least three additional standards establish suspension as the presumptive sanction for Respondent's other misconduct: ABA Standard 4.12 applies when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to the client; ABA Standard 4.42(a) applies when a lawyer knowingly fails to perform services for a client, causing injury or potential injury *858 to the client; and ABA Standard 4.62 applies when a lawyer knowingly deceives a client, causing injury or potential injury to the client. As the theoretical framework of the ABA Standards notes, "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct."[4]
ABA Standard 9.0-Aggravating and Mitigating Factors
Aggravating circumstances include any considerations or factors that may justify an increase in the degree of the presumptive sanction to be imposed, while mitigating circumstances may warrant a reduction in the severity of the sanction.[5] Four aggravating factors are present here: Respondent has prior discipline, he acted with a dishonest motive, he engaged in a pattern of misconduct, and he has substantial experience in the practice of law.[6] The Court is aware of two mitigators: Respondent ultimately paid Hagen the funds he was owed (though he did so while the disciplinary case was pending) and, as the People concede, Respondent's prior discipline is remote in time.[7]
Analysis Under ABA Standards and Colorado Case Law
The Court is aware of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[8] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[9] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.
The People request disbarment in this matter. This request is amply supported. The Colorado Supreme Court has repeatedly held that knowing conversion of client funds warrants disbarment, except where substantial mitigating factors are present.[10] Here, the aggravating factors outweigh the applicable mitigating factors. Thus, the settled case law, coupled with the presumptive sanction and the predominance of aggravating factors, clearly supports imposition of disbarment.
IV. CONCLUSION
In this matter, Respondent failed to uphold multiple duties to his client, most significantly by converting client funds. Because there is no basis for deviating from the presumptive standard here, the Court disbars Respondent.
V. ORDER
The Court therefore ORDERS:
1. RICHARD O. SCHROEDER , attorney registration number 27616 , will be DISBARRED FROM THE PRACTICE OF LAW . The DISBARMENT
*859 SHALL take effect only upon issuance of an "Order and Notice of Disbarment."[11]
2. To the extent applicable, Respondent SHALL promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.
3. Respondent also SHALL file with the Court, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.
4. The parties MUST file any posthearing motion on or before Tuesday, January 23, 2018 . Any response thereto MUST be filed within seven days.
5. The parties MUST file any application for stay pending appeal on or before Tuesday, January 30, 2018 . Any response thereto MUST be filed within seven days.
6. Respondent SHALL pay the costs of this proceeding. The People SHALL submit a statement of costs on or before Tuesday, January 23, 2018 . Any response thereto MUST be filed within seven days.

See C.R.C.P. 251.1(b).

Found in ABA Annotated Standards for Imposing Lawyer Sanctions (2015).

See In re Roose, 69 P.3d 43, 46-47 (Colo. 2003).

ABA Annotated Standards for Imposing Lawyer Sanctions xx.

See ABA Standards 9.21 & 9.31.

ABA Standards 9.22(a)-(c) and (i). In 2004, Respondent received a fully stayed thirty-day suspension, with one year of probation, in case number 04PDJ027.

ABA Standards 9.32(d) & (m); see In re Fischer , 89 P.3d 817, 821 (Colo. 2004) (ruling it the "better policy to allow a good faith effort to make restitution to be considered in mitigation in order both to encourage lawyers to reduce the injuries they have caused and help insure recognition of the wrongfulness of their conduct" and commenting that "[r]estitution prior to the initiation of disciplinary proceedings ... present[s] the clearest case for mitigation, while restitution later in the proceedings present[s] a weaker case"). Because Respondent did not make full restitution until more than a year after his first contact with the People in this disciplinary matter, this mitigating factor merits moderate rather than significant weight in the Court's analysis.

See In re Attorney F. , 285 P.3d 322, 327 (Colo. 2012) ; In re Fischer , 89 P.3d at 822 (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

In re Attorney F. , 285 P.3d at 327 (quoting In re Rosen , 198 P.3d 116, 121 (Colo. 2008) ).

See, e.g., People v. Varallo , 913 P.2d 1, 10-12 (Colo. 1996).

In general, an order and notice of disbarment will issue thirty-five days after a decision is entered under C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.