WILLIAM R. LUCERO, PRESIDING DISCIPLINARY JUDGE
Varen Craig Belair ("Respondent") was retained by a client to apply for and maintain certain intellectual property patents. Despite his many assurances over the course of years that all the client's applications and patents were in good order, Respondent had, in fact, knowingly neglected the work he had contracted to do yet continued to collect on invoices he issued to the client. By the time the client discovered his mendacity, Respondent *358 had converted close to $100,000.00 in unearned fees and had caused several of the client's patents to be deemed abandoned. In another matter, Respondent refused to pay a vendor who, at Respondent's request, had performed work for him. When disciplinary authorities asked Respondent to respond to a request for investigation, Respondent failed to do so, though he promised he would. Taken together, this pattern of neglect, deceit, and conversion warrants disbarment.
I. PROCEDURAL HISTORY
On May 8, 2017, the Colorado Supreme Court immediately suspended Respondent under C.R.C.P. 251.8.6 for failure to cooperate. On August 18, 2017, Erin R. Kristofco, Office of Attorney Regulation Counsel ("the People"), filed a complaint with the Presiding Disciplinary Judge ("the Court"). The same day, the People sent copies of the complaint to Respondent via certified mail at his registered business and home addresses. Respondent failed to answer, and the Court granted the People's motion for default on October 6, 2017. Upon the entry of default, the Court deemed all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[1]
On December 19, 2017, the Court held a sanctions hearing under C.R.C.P. 251.15(b). Kristofco represented the People; Respondent did not appear. At the sanctions hearing, Cassandra Evans testified by telephone, Mary Lynne Elliott testified in person, and the People's exhibits 3-8 were admitted into evidence.
II. ESTABLISHED FACTS AND RULE VIOLATIONS
Respondent took the oath of admission and was admitted to practice law in Colorado on May 14, 2001, under attorney registration number 32696. He is thus subject to the Court's jurisdiction in this disciplinary proceeding.[2]
Phillip Treeby Matter
On July 14, 2014, Respondent hired a British company, R G C Jenkins & Co. ("RGC") to file a patent application with the European Patent Office ("EPO") for Respondent's client, Strategic Resource Optimization, Inc. Respondent provided RGC the necessary documentation so it would file the patent application with the EPO. RGC did so on July 16, 2014.
On August 5, and again on November 5, 2014, RGC issued invoices to Respondent, seeking payment of approximately $8,719.00 for the filing. Respondent emailed RGC around April 17, 2015, asking for a copy of both invoices, apologizing, and explaining that he thought the invoices had already been paid. He admitted he owed RGC the amounts it had requested.
Though RGC resent the invoices, Respondent failed to pay them and failed to communicate with RGC. RGC eventually referred the debt to Krysium Advisors Limited for collection. During the last two years, Respondent has failed to respond to RGC's and Krysium's many attempts to communicate and collect the debt. Respondent never paid the debt.
On August 23, 2016, the People mailed to Respondent's registered business address requests for investigations lodged by Krysium and RGC, along with a letter to which Respondent was asked to respond. Although he received the letter, Respondent did not respond. On September 23, the People sent Respondent a letter, advising him that failure to cooperate with an investigation is itself grounds for discipline. On October 26, the People again wrote to Respondent, asking him to respond. He did not. On March 20 and April 4, 2017, the People spoke to Respondent over the phone; on both occasions Respondent vowed to respond to the requests for investigation. But he did not. On May 8, 2017, the Colorado Supreme Court immediately suspended Respondent under C.R.C.P. 251.8.6 for failure to cooperate.
Through this misconduct, Respondent violated C.R.C.P. 251.5(d), which provides that *359 an attorney must respond to a request from the People, and Colo. RPC 8.1(b), which forbids a lawyer from knowingly failing to respond to the People's lawful demand for information. Respondent also violated Colo. RPC 8.4(d), which proscribes conduct that is prejudicial to the administration of justice.
Cassandra Evans Matter
Around 2002, Cassandra Evans, human resources and office manager for Targeted Medical Pharma, Inc. ("TMP"), retained Respondent to pursue on TMP's behalf various national and international intellectual property rights and patents. Over the course of fifteen years, TMP paid Respondent to file applications for patents. Respondent indicated that TMP's patent filings were properly completed and that TMP had been granted certain patents.
But in January 2016, TMP discovered, while preparing for a financial statement audit, that several of its pending patent applications in the United States and in other countries had been deemed abandoned due to Respondent's failure to timely respond to actions taken by patent offices reviewing those applications.
From April 2010 through February 2015, TMP paid Respondent a total of $251,868.00. TMP paid several invoices that Respondent issued, yet Respondent never prepared or filed some of the applications related to those invoices. Instead, Respondent kept all fees that TMP paid him, even though he did not complete certain legal work. Respondent thereby converted more than $68,000.00 of TMP's unearned legal fees.
Other yearly fee invoices Respondent issued were purportedly to maintain various patents and applications and to update the intellectual property section of the company's publicly filed 10K documents. Respondent did not complete this work, however. Rather, Respondent would send TMP falsified reports listing the client's various patents and annotating the report with updates such as "in good order" and "awaiting the next communication," indicating that he was maintaining those patents when, in fact, he was not. Contrary to these statements, nine of TMP's patents were deemed abandoned due to Respondent's inaction. Respondent never refunded any of TMP's unearned legal fees.
On January 4, 2017, the People mailed to Respondent copies of Evans and TMP's request for investigation, asking him to respond within twenty-one days. On January 31 and again on February 15, the People sent Respondent a letter, reminding him to respond. Respondent did not. On March 20, the People spoke with Respondent on the phone. He promised to respond to the request for investigation no later than April 3. But Respondent did not provide any response or information.
Through this misconduct, Respondent violated Colo. RPC 1.1, which requires a lawyer to provide competent representation; Colo. RPC 1.3, which mandates that a lawyer act with diligence and promptness; Colo. RPC 1.4(a) & (b), which provides that a lawyer must keep a client reasonably informed about the status of a matter and explain a matter to the extent necessary for the client to make informed decisions about the representation; C.R.C.P. 251.5(d) and Colo. RPC 8.1(b); and Colo. RPC 8.4(c), which proscribes a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.
III. SANCTIONS
The American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards ")[3] and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[4] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.
ABA Standard 3.0-Duty, Mental State, and Injury
Duty : Respondent violated client-centered duties to safeguard client property, to communicate, *360 and to act with diligence and candor. By failing to pay money he owed to third-party RGC, he violated duties to the public to act honestly. And he violated duties to the legal profession by declining to cooperate with the People in their investigation.
Mental State : The Court's order entering default establishes that Respondent acted knowingly when he converted TMP's funds and when he failed to cooperate with the People's investigation. Given Respondent's pattern of dissembling and evasion, however, the Court has no trouble finding that he acted intentionally in failing to cooperate with the People, failing to pay RGC, and failing to communicate with TMP. The remaining facts in this matter, coupled with Respondent's failure to put forth any defense, support the inference that he knowingly committed the other misconduct in this case.
Injury : Respondent seriously harmed TMP financially. Evans collaborated with Elliott, the People's investigator, to create a chart summarizing the invoices Respondent had issued to TMP, compared against the fees he collected but did not earn.[5] Based on their calculations, Respondent converted from TMP $94,243.43 in unearned fees.[6] But TMP's financial injury was not limited simply to Respondent's conversion of unearned fees; his inaction-resulting in the failure to file or to pursue existing applications-caused the company incalculable loss of potential revenue. As Evans explained, patents take several years to review, file, and then issue; Respondent's abandonment of TMP's applications from 2012 onward may have caused the company to lose out not only on profits from those patents during that period but the rights to the patents altogether.[7] This is because in the intervening time, other companies may have sought and been awarded valuable patent rights to intellectual property already developed by TMP involving enhancements for neurotransmitter activity, cellular technologies, and stem cells, including a patent to produce red blood cells and a patent to produce growth hormone. Evans testified, "those are where we suffer the great loss, because in the last five years there's been ... it's really come a long way in these last five years." She added, "We could have potentially had the most gain from them." Respondent also caused TMP serious potential harm by providing them falsified documentation, which they in turn relied on in their publicly filed statements.[8]
Respondent caused RGC financial injury. As Philip Treeby, a partner at RGC, attested by affidavit, Respondent's refusal to pay RGC for its services cost the company GBP £6,931.60,[9] along with forty-two hours of time wasted in attempting to collect the debt.[10] Further, by causing employees of RGC to question whether other American lawyers can be trusted to deal with the company honorably, Respondent's dishonesty has damaged the reputation of the American legal profession; Treeby states that Respondent's failure to pay "is regarded by key personnel within the firm as evidence that instruction by a US attorney does not afford certainty as to payment and that as a consequence US attorney forms should not, as is currently the case, be granted credit facilities automatically."[11]
ABA Standards 4.0-7.0-Presumptive Sanction
ABA Standard 4.11, which calls for disbarment when a lawyer knowingly converts client property and causes injury or potential injury to a client, establishes the presumptive sanction in this matter. Though other Standards point to presumptive sanctions for Respondent's communication, diligence, and competence shortcomings, the Court's starting point in his case is disbarment, because *361 "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct."[12]
ABA Standard 9.0-Aggravating and Mitigating Factors
Aggravating circumstances include any considerations or factors that may justify an increase in the degree of the presumptive sanction to be imposed, while mitigating circumstances may warrant a reduction in the severity of the sanction.[13] Six aggravating factors are present here: Respondent's dishonest or selfish motive, his pattern of misconduct, multiple offenses, his refusal to acknowledge the wrongful nature of his misconduct, his substantial experience in the practice of law, and his indifference to making restitution.[14] Respondent's absence of prior discipline is the only mitigating factor of which the Court is aware.[15]
Analysis Under ABA Standards and Colorado Case Law
The Court recognizes the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[16] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[17] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.
Case law makes clear that the sanction for conversion of funds, absent ample mitigating factors, should be disbarment.[18] Respondent's failure to participate in this disciplinary proceeding only underscores the fitness of that sanction.[19] Respondent refused to pay almost $10,000.00 to a vendor who had rendered valuable services at his request. Further, over the course of several years, Respondent knowingly neglected legal work that he was paid to complete. He then repeatedly misrepresented the status his work while purloining close to $100,000.00 of unearned client funds. Later, he shirked his responsibility to return these funds to their rightful owner, all the while acknowledging his obligation to do so. The Court has no trouble concluding that Respondent's knowing conversion, his other serious misconduct, his failure to participate in this proceeding, and the preponderance of aggravating factors all militate in favor of his disbarment.
IV. CONCLUSION
When an attorney fails to perform agreed-upon work, repeatedly makes misrepresentations to cover up his inaction, and meanwhile converts significant sums of his client's money, that attorney has abandoned his responsibilities to his client and abdicated his status within the legal profession. Such conduct must be met with disbarment.
V. ORDER
The Court therefore ORDERS:
1. VAREN CRAIG BELAIR , attorney registration number 32696 , will be DISBARRED FROM THE PRACTICE OF LAW . The DISBARMENT SHALL take effect only upon issuance of an "Order and Notice of Disbarment."[20]
*362 2. To the extent applicable, Respondent SHALL promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.
3. Respondent also SHALL file with the Court, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.
4. The parties MUST file any posthearing motions on or before Monday, February 26, 2018 . Any response thereto MUST be filed within seven days.
5. The parties MUST file any application for stay pending appeal on or before Monday, March 5, 2018 . Any response thereto MUST be filed within seven days.
6. Respondent SHALL pay the costs of this proceeding. The People SHALL file a statement of costs on or before Monday, February 26, 2018 . Any response thereto MUST be filed within seven days.
7. On or before Monday, March 12, 2018 , Respondent SHALL pay restitution to Targeted Medical Pharma, Inc., in the amount of $94,243.43.
8. On or before Monday, March 12, 2018 , Respondent SHALL pay restitution to R G C Jenkins & Co., in the amount of $9,182.14.

See C.R.C.P. 251.15(b) ; People v. Richards , 748 P.2d 341, 346 (Colo. 1987).

See C.R.C.P. 251.1(b).

Found in ABA Annotated Standards for Imposing Lawyer Sanctions (2015).

See In re Roose, 69 P.3d 43, 46-47 (Colo. 2003).

See Exs. 5-6.

Ex. 6.

Evans testified that she, along with an attorney TMP retained, created a chart listing abandoned intellectual property. Ex. 8.

See Ex. 7.

Ex. 3 ¶ 5. The People seek in restitution an equivalent in American dollars, which they peg at $9,182.14.

Ex. 3 ¶ 6.

Ex. 3 ¶ 6.

ABA Annotated Standards for Imposing Lawyer Sanctions xx.

See ABA Standards 9.21 & 9.31.

ABA Standards 9.22(b)-(d), (g), and (i)-(j).

ABA Standard 9.32(a).

See In re Attorney F. , 285 P.3d 322, 327 (Colo. 2012) ; In re Fischer , 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

In re Attorney F. , 285 P.3d at 327 (quoting In re Rosen , 198 P.3d 116, 121 (Colo. 2008) ).

See, e.g., People v. Varallo , 913 P.2d 1, 10-12 (Colo. 1996).

See People v. Stevenson , 979 P.2d 1043, 1045 (Colo. 1999).

In general, an order and notice of sanction will issue thirty-five days after a decision is entered under C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.