WILLIAM R. LUCERO, PRESIDING DISCIPLINARY JUDGE
*552 Albert R. Snyder ("Respondent") was hired to obtain lawful permanent residence status for a Mexican national married to a U.S. citizen. Respondent failed to communicate with the couple during the representation and failed to effectively explain his legal strategies. Further, his inaction on the case resulted in the expiry of the husband's immigration petition. While representing these clients, Respondent was administratively suspended from the practice of law, yet he failed to advise the couple of his suspension, and he did not withdraw from the representation. Respondent could never produce an accounting of his time or attorney's fees. Respondent's misconduct warrants suspension for three years.
I. PROCEDURAL HISTORY
Jacob M. Vos, Office of Attorney Regulation Counsel ("the People"), filed a complaint with Presiding Disciplinary Judge William R. Lucero ("the Court") on September 22, 2017. The People sent a copy of the complaint to Respondent's registered address. They also sent him the complaint via email, and Respondent replied, confirming receipt. But Respondent failed to file an answer. By order dated December 1, 2017, the Court entered default, thereby deeming admitted the allegations and claims in the complaint.
On March 8, 2018, the Court held a sanctions hearing under C.R.C.P. 251.15(b). Vos represented the People; Respondent did not appear.[1] The People's exhibits 1-16 were admitted into evidence, and the Court heard testimony from Marta Hawk and Francisco Sanchez Ruiz, who both testified by telephone.[2]
II. ESTABLISHED FACTS AND RULE VIOLATIONS
The Court adopts and incorporates by reference the averments in the admitted complaint, *553 presented here in condensed form. Respondent took the oath of admission and was admitted to practice law in Colorado on April 23, 2010, under attorney registration number 41912. He is thus subject to the Court's jurisdiction in this disciplinary proceeding.[3]
This case arises out of Respondent's representation of Marta Hawk, a U.S. citizen, and her husband, Francisco Sanchez Ruiz, a Mexican national. Ruiz entered the United States without inspection and lived in the country illegally for many years. Ruiz and Hawk were married in April 2014.
The couple hired Respondent in April or May 2014, in order to secure for Ruiz lawful permanent residency, known as a green card. Prior to retaining Respondent, Ruiz filed for certification under the Deferred Action for Childhood Arrivals ("DACA") and received a work permit. The couple wanted to secure Ruiz's green card before the 2016 presidential election.
Hawk paid Respondent between $3,500.00 and $5,000.00 for the representation. Respondent did not give the couple a fee agreement or any other writing memorializing his fees. Neither Hawk nor Respondent retained written records of payments. Respondent also failed to maintain any accounting records.
Beginning in May 2014 and continuing until December 2015, Respondent was administratively suspended from the practice of law for failing to pay his attorney registration fees. He knew about his suspension and was required to notify Hawk and Ruiz of the suspension.[4] He did not do so, nor did he withdraw from the representation.
In June 2014, Respondent prepared and filed an I-130 Petition for Alien Relative with the U.S. Citizenship and Immigration Services ("USCIS"). This petition was filed to establish the existence of the couple's marriage and to petition the U.S. government for Ruiz's immigration visa. The couple received notice in fall 2014 that USCIS had approved the petition and that the matter had been transferred to the National Visa Center ("NVC") for processing.
Ruiz next needed to file Form I-601A to waive his unlawful presence in the United States and apply for an immigration visa through consular processing in Cuidad Juarez. To obtain the waiver, Ruiz needed to show that a refusal of his admission to the United States would cause an extreme hardship to his family. Neither Respondent nor Ruiz filed this form. Respondent did not inform the couple about the next step in Ruiz's immigration process, although he did give Hawk a list of documents to assemble.
Beginning in December 2014, Respondent became less communicative with the couple. Respondent planned to prepare an I-864 Affidavit of Support, demonstrating that Hawk could support Ruiz. Respondent collected some of the supporting documents from Hawk but never filed the affidavit.
On April 5, 2015, Hawk paid Respondent $200.00 in cash, and Respondent gave her a receipt. The next day, he collected an additional $445.00 from her, and again gave her a receipt. These were the only two receipts Hawk received from Respondent.
In September 2015, Hawk contacted Respondent, asking for the list of documents they needed to submit to NVC. He sent her an incomplete list. As December 2015 approached, Hawk told Respondent that the NVC process needed to be completed by the end of February 2016 due to their work schedules. In February 2016, Respondent contacted Hawk and asked for additional information.
The couple met with Respondent on April 16, 2016, to give him the documents they had compiled. During this meeting, Respondent learned that Ruiz's father, who lived in Mexico, was ill. Respondent discussed with the couple the possibility of Ruiz applying for advance parole, which would allow Ruiz to visit his father in Mexico and reenter the *554 United States. Advance parole also permits an applicant to adjust his or her status and to apply for a green card. The couple agreed to proceed with advance parole and believed Respondent would continue with the pending NVC petition. Respondent failed to explain to the couple that by proceeding with advance parole they would be abandoning the NVC process, forfeiting any fees they had previously paid.
In late April 2016, the couple made an appointment at the local USCIS office to apply for advance parole. When they arrived, they realized Respondent had not prepared them for the appointment, and they had to reschedule it. The second appointment was successful: Ruiz was granted advance parole and allowed to return to Mexico one time to visit his father. USCIS advised the couple that they could apply for a multi-entry permit. That same month, the couple had a confrontational telephone call with Respondent but did not terminate the representation.
Also in April, Respondent instructed Hawk via email about filing for a multi-entry permit.[5] The couple handled this process although Respondent reviewed their draft application and assisted them to write a cover letter. Ruiz's multi-entry permit was approved.
On May 20, 2016, Hawk received notice from NVC that the I-130 petition was terminated because Respondent had not contacted the office in over a year. The couple still needed to complete this petition even though Ruiz was granted advance parole. That same day, Hawk reached out to Respondent via text message, asking him to explain how to proceed with the I-130 petition. NVC reopened Ruiz's petition in late May only because of Hawk's efforts.
Sometime between May 20 and June 8, 2016, the couple terminated Respondent's representation. They demanded that Respondent return their file and provide an accounting of his fees. Hawk also asked Respond to refund of half of his attorney's fees and the $445.00. In June, Respondent returned an incomplete file to the couple. The file was missing Ruiz's DACA file, which the couple had given Respondent. Hawk asked Respondent three times to return the DACA file and provide copies of all correspondence between Respondent and U.S. government agencies. Respondent returned the DACA file on July 19. Hawk again asked Respondent to refund the $445.00, but he did not do so because he said he sent the funds to USCIS as an advanced filing fee. He never provided the couple with an accounting.
In this representation, Respondent violated eight Rules of Professional Conduct:
• Respondent violated Colo. RPC 1.3, which requires a lawyer to act with reasonable diligence and promptness when representing a client, by allowing the I-130 petition to expire.
• By failing to adequately explain to the couple why he changed tactics from pursuing an immigration visa to pursing advance parole, he violated Colo. RPC 1.4(b), which requires a lawyer to explain a matter so as to permit the client to make informed decisions regarding the representation.
• Respondent violated Colo. RPC 1.4(a)(4), which requires a lawyer to promptly comply with reasonable requests for information, when he ignored Hawk's repeated requests for information and an accounting.
• By failing to communicate the basis of his attorney's fees in writing, Respondent contravened Colo. RPC 1.5(b), which requires a lawyer who has not regularly represented the client to inform the client in writing about the lawyer's fees and expenses within a reasonable time after being retained.
• When he failed to provide an accounting of client funds upon Hawk's request, Respondent violated Colo. RPC 1.15A(b), which requires a lawyer to promptly deliver to the client or third party any funds or property that person is entitled to receive.
• By failing to keep or maintain any financial records, Respondent transgressed Colo. RPC 1.15D, which provides *555 that a lawyer must maintain trust account records.
• Respondent violated Colo. RPC 3.4(c), which precludes a lawyer from knowingly violating an obligation under the rules of a tribunal, when he failed to provide his clients notice of his administrative suspension and continued to represent them while his license to practice law was suspended.
• By practicing law without authorization during his administrative suspension, Respondent violated Colo. RPC 5.5(a)(1), which precludes a lawyer from practicing law without a valid law license or other specific authorization.
III. SANCTIONS
The American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards ")[6] and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[7] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.
ABA Standard 3.0-Duty, Mental State, and Injury
Duty : By failing to exercise diligence, failing to communicate with his clients, failing to provide his clients with a written fee agreement, and failing to provide an accounting or retain financial records, Respondent violated his duties to his clients. He also contravened duties he owed to the legal system and the legal profession by practicing law in defiance of an administrative order of suspension.
Mental State : The admitted facts in this matter demonstrate that Respondent knowingly practiced law while under an administrative order of suspension. The admitted facts in this matter, coupled with Respondent's failure to put forth any defense, support the inference that he knowingly committed the remaining misconduct.
Injury : At the sanctions hearing, Hawk testified that Respondent caused her and Ruiz substantial frustration and betrayed their trust in lawyers. According to Hawk, Respondent was very unclear about his strategies in Ruiz's immigration case and did not explain matters to them; nor did he assist them to reinstate the I-130 petition. Rather, Hawk was forced to call NVC and "beg" the office to reinstate Ruiz's case. Hawk also doubts that Respondent used the $445.00 she paid him for filing fees because he never filed anything.[8] She testified that she and Ruiz were very concerned about how the 2016 presidential election would affect Ruiz's status. They lived in "terror," she said, but Respondent did not get Ruiz's green card before the election. Hawk also stated that when Ruiz's father became ill, it was very stressful for the couple not to hear from Respondent because they worried Ruiz would be deported if he visited his father in Mexico. The couple hired a new attorney who was able to secure a green card for Ruiz. Ruiz also testified that he was frustrated by Respondent's representation, as it cost him and Hawk a lot of money.
Respondent's conduct also created the risk of potential harm. Had Hawk been unable to reinstate the I-130 petition, Ruiz might not have obtained legal status in the United States. He may also have risked deportation. Finally, Respondent injured the legal system and legal profession by disobeying a court order that restricted his practice of law.
ABA Standards 4.0-7.0-Presumptive Sanction
In this case, four separate ABA Standards arguably apply.
• ABA Standard 4.12 calls for suspension when a lawyer knows or should know *556 that he is dealing improperly with client property and causes injury or potential injury to a client.
• ABA Standard 4.42 calls for suspension when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client.[9]
• ABA Standard 6.22 calls for suspension when a lawyer knowingly violates a court order, causing injury or potential injury to a client or other party or causing interference or potential interference with a legal proceeding.
• ABA Standard 7.2 provides that suspension is generally warranted when a lawyer knowingly engages in conduct that violates a duty owed as a professional, thereby causing injury or potential injury to a client, the public, or the legal system.
As the theoretical framework of the ABA Standards notes, "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct."[10]
ABA Standard 9.0-Aggravating and Mitigating Factors
Aggravating circumstances include any considerations or factors that may justify an increase in the degree of the presumptive sanction to be imposed, while mitigating circumstances may warrant a reduction in the severity of the sanction.[11] Four aggravating factors are present here: Respondent engaged in a pattern of misconduct,[12] he committed multiple offenses, he has substantial experience in the practice of law, and he was indifferent to making restitution.[13] Because Respondent defaulted, the Court is unaware of any factors in mitigation.
Analysis Under ABA Standards and Colorado Case Law
The Court is aware of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[14] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[15] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.
*557 The People request a significant served suspension in this matter, lengthy enough to require Respondent to petition for reinstatement under C.R.C.P. 251.29(c). This request is amply supported. In People v. Shock , the Colorado Supreme Court suspended an attorney for three years for, among other misconduct, abandoning two client matters, failing to communicate with his client, and failing to notify clients of his administrative suspension.[16] The attorney also defaulted in the disciplinary case.[17] The attorney's default, along with the application of five aggravating factors, warranted a three-year suspension.[18] The Colorado Supreme Court suspended an attorney for one year and one day in People v. Kargol , where the attorney appeared as counsel of record in at least thirteen court proceedings while under an administrative order of suspension but where his actions did not harm his clients.[19] An attorney was suspended for one year and one day in People v. Rishel for serious neglect of two client matters and communication deficiencies.[20]
The Court finds that a significant served suspension is appropriate here in light of the People's recommendation and relevant case law. Although Respondent's practice of law while administratively suspended caused little actual harm to his clients' legal proceeding, there was the potential to cause great harm. The Court is also troubled that Respondent's continued practice of law while suspended appears to be part of a larger pattern of the same misconduct stretching back to 2012. Respondent has failed to take steps to make any restitution to Hawk or Ruiz, despite performing very little work on their case. And his lack of accounting records makes it impossible for the Court to award restitution in his case. Taking into consideration the misconduct and the number of aggravators and lack of mitigators, the Court suspends Respondent for three years.
IV. CONCLUSION
In this matter, Respondent failed to honor multiple duties to his clients, most significantly by neglecting their immigration matter. He also practiced law while administratively suspended, flouting his obligations to the legal system and legal profession. The Court suspends Respondent for a period of three years.
V. ORDER
The Court therefore ORDERS:
1. ALBERT R. SNYDER , attorney registration number 41912 , will be SUSPENDED FOR THREE YEARS FROM THE PRACTICE OF LAW . The SUSPENSION SHALL take effect only upon issuance of an "Order and Notice of Suspension."[21]
2. To the extent applicable, Respondent SHALL promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.
3. Respondent also SHALL file with the Court, within fourteen days of issuance of the "Order and Notice of Suspension," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.
4. The parties MUST file any posthearing motion on or before Tuesday, *558 April 24, 2018 . Any response thereto MUST be filed within seven days.
5. The parties MUST file any application for stay pending appeal on or before Tuesday, April 30, 2018 . Any response thereto MUST be filed within seven days.
6. Respondent SHALL pay the costs of this proceeding. The People SHALL submit a statement of costs on or before Tuesday, April 24, 2018 . Any response thereto MUST be filed within seven days.

The People filed a notice with the Court on March 2, 2018, indicating that Respondent had contacted them requesting a continuance of the hearing. The People urged Respondent to file a motion, but he did not do so.

The morning of the hearing, the People filed a notice with the Court indicating that Hawk had the flu and could not travel to the hearing but could testify by telephone. They stated that Ruiz wanted to stay with his wife while she was sick and could testify by telephone as well. The Court permitted Hawk and Ruiz to testify by telephone.

See C.R.C.P. 251.1(b).

Respondent's law license was suspended for ninety days on March 22, 2016, in case number 16PDJ028, but his suspension was stayed pending completion of a successful two-year period of probation. Ex. 1. In that case, Respondent's probation was revoked on December 1, 2017, and he began serving the ninety-day suspension on December 15, 2017.

See Ex. 3.

Found in ABA Annotated Standards for Imposing Lawyer Sanctions (2015).

See In re Roose, 69 P.3d 43, 46-47 (Colo. 2003).

The People are not seeking restitution in this case because they are unable to determine the exact amount that Hawk and Ruiz paid Respondent for attorney's fees and filing fees.

The People indicate that either ABA Standard 4.42 or 4.43 applies for Respondent's violations of Colo. RPC 1.3, 1.4(a)(4), and 1.4(b). Because Respondent acted knowingly when committing these rule violations, the Court chooses to apply ABA Standard 4.42 rather than 4.43, which relies on a negligent mental state.

ABA Annotated Standards for Imposing Lawyer Sanctions xx.

See ABA Standards 9.21 & 9.31.

Although the People request application of ABA Standard 9.22(a) (prior disciplinary offenses), the Court finds application of ABA Standard 9.22(c) (pattern of misconduct) more appropriate here. Respondent agreed to a stayed suspension and was placed on probation in case number 16PDJ028 on March 22, 2016. His probation was revoked on December 1, 2017, based on his default in case number 17PDJ067. He was sanctioned in case number 16PDJ028 for practicing law while under three administrative suspension orders in effect from May 1 to October 19, 2012; May 1, 2013, to January 29, 2014; and May 1, 2014, to December 2015. His misconduct in this matter occurred between April 2014 and May 2016. Because the conduct at issue here occurred during the same time period as the misconduct in case number 16PDJ028, the Court determines that Respondent's misconduct in that case is better applied here as a pattern of misconduct. See People v. Honaker , 863 P.2d 337, 340 (Colo. 1993) (treating a prior case as a pattern of misconduct rather than prior discipline where the underlying conduct occurred contemporaneously with the misconduct in the previous case and where the underlying misconduct ended prior to the order of suspension in the first case).

ABA Standards 9.22(c)-(d), (i)-(j).

See In re Attorney F. , 285 P.3d 322, 327 (Colo. 2012) ; In re Fischer , 89 P.3d at 822 (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

In re Attorney F. , 285 P.3d at 327 (quoting In re Rosen , 198 P.3d 116, 121 (Colo. 2008) ).

970 P.2d 966, 966-67 (Colo. 1999).

Id . at 966.

Id . at 968.

854 P.2d 1267, 1268 (Colo. 1993) ; see also People v. Clark , 900 P.2d 129, 130 (Colo. 1995) (suspending a lawyer for one year and one day for practicing law while under an administrative suspension where no actual harm to the clients was shown).

956 P.2d 542, 543-44 (Colo. 1998).

In general, an order and notice of suspension will issue thirty-five days after a decision is entered under C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.